Galveston, Harrisburg & San Antonio Railway Company
v. Thomas Johnson.

No. 6188.

1. **Contract—Construction—Use.**—Where the terms used in a contract are apparently inconsistent its meaning may be indicated by the interpretation given to it by those first acting under it.

2. **Same.**—Where two modes of calculation of the contents of an embankment for payment per cubic yard are in a contract and which appear inconsistent, the fact that an actual measurement was made upon one may be considered as persuasive that the measurement in fact should be recognized as that provided for. The language being doubtful, the practical construction given it by the parties should control its interpretation.

3. **Same.—Contract—Its Terms and Practical Construction** upon mode of measurement, whether from the excavation or the embankment made from the excavation.

4. **Charge—Construing Contract.**—While it is the duty of the court to charge the jury upon the contract made the basis of the suit on trial, still if the verdict be such as would have followed a just explanation of the contract a failure to charge the meaning of the contract is no ground of complaint on appeal. So also of a charge held to be defective where the finding by the jury is approved.

5. **Contract as to Overhaul in Making Embankments.**—Where the terms of a contract are irreconcilable it is not error to refuse to charge upon one clause of the contract when a contradictory one has been practically acted upon by the parties acting under it. The language of the contract being doubtful, the practical construction deliberately given it by both parties should control its interpretation.

6. **Estoppel—Charge.**—The contract for work done under a contract came into dispute, the owner and the contractor having different views as to the mode of ascertaining the amount of money earned by the contractor. Payment was made from time to time upon the owner's view as to the mode of measurement. There being evidence that the contractor protested when receiving the money it was not error to refuse a charge to the effect that if the contractor received the money without protest he was estopped to dispute the construction put upon the contract by the owner.

7. **Construction of Contract—Chief Engineer.**—In a contract providing that "whenever in the opinion of the chief engineer [of the railway company] this contract shall have been wholly completed by the party of the first part [the contractor] they [the railway company] will pay in currency for the performance of the same in full for material and labor as follows," etc.; *held*, that thereby the chief engineer did not have the power to finally determine the construction of the agreement. 65 Texas, 658.

8. **Limitation.**—An action for work done under a contract in writing is not barred until after four years from the accrual of the right of action under the contract.

Appeal from Bexar. Tried below before Hon. G. H. Noonan.

This is an appeal from a judgment below in favor of appellee Johnson for $21,415.16 with interest from August 31, 1882, total $28,910.45, against the appellant. The cause of action was work done under a construction contract and involved the construction or interpretation of a written instrument signed by and in behalf of the parties March 14, 1882. Suit was filed December 16, 1884.

All the obligations devolving upon the contractor under said contract were fully performed by plaintiff, and his pay therefor became due on the

31st day of August, 1882. The engineers of the defendant (appellant), by the direction of James Converse, superintendent of construction for railway company, construed the contract to mean that appellee was only entitled to be paid for rock embankment by cut or excavation measure, and so measured his work and paid him. They also construed said contract to mean that the overhaul provided for in said contract should be paid on the amount in embankments measured according to their construction of the contract, and so paid appellee. They also failed to allow or pay anything for the rock filling of subgrade as a part of the rock embankment made by him.

The whole amount of rock embankment on the work according to excavation or cut measure, and for which plaintiff was paid, was 73,455 cubic yards at 30 cents, $22,036.50.

The whole amount of rock embankment on the work according to embankment measure was 118,468 cubic yards at 30 cents, $35,540.40, making a difference of $13,503.90 on the item of rock embankment between the two modes of measurement.

The whole amount of overhaul on the embankments measured by cut or excavation measure for which plaintiff was paid amounted to $11,997.40.

The whole amount of overhaul on the embankments measured by embankment measure amounted to the sum of $17,991,06, making a difference of $5,993.66 between the two modes of measurement.

The whole amount of rock embankment made in filling a subgrade required under the contract by appellant's engineers, and for which the appellee was paid nothing, was 6392 yards at 30 cents, $1917.60; these items making a total of $21,415.16.

The plaintiff (appellee) brought this suit for the amounts aforesaid with interest from the 31st day of August, 1882, at eight per cent per annum, alleging that they were a balance due him upon the contract, and that they were not paid to him on account of the fact that the engineers of appellant construed the contract between the parties so as to give nothing more to plaintiff.

The defendant answered denying all the allegations of plaintiff's pleading, then specially pleading payment, that the decision of its engineers was conclusive between the parties, and that more than two years had elapsed between the time when the estimates were made and the bringing of this suit.

Upon trial plaintiff recovered judgment and the defendant appealed. The opinion sufficiently states the additional facts.

*Wœlder & Upson*, for appellant. — 1. As to the duty of the court to construe written contracts. Shepherd v. White, 11 Texas, 358; Goddard v. Foster, 17 Wall., 142; Thomp. "Charging the Jury," sec. 12.

2. Every material issue in the case should have been submitted to the

jury.   The failure of the court to do this is such an error as should reverse the judgment.   Thompson v. Shannon, 9 Texas, 537; I. & G. N. Ry. v. Underwood, 64 Texas, 467, 468; Drakely v. Gregg, 8 Wall., 268; Thomp. "Charging the Jury," secs. 62, 66, 71.

3.   On limitation.   The final estimates were made on the 31st day of August, 1882.   They were paid at that time or within a month thereafter.   The original petition in this case was filed December 16, 1884. Rev. Stats., art. 3203, subd. 5; Wood on Lim., sec. 280.

*Houston Bros.*, for appellee. — 1.   The sole issue in this case was, Were the embankments to be measured in the pit or cut or in the embankment? This question had to be determined not alone from the written contract but from the evidence adduced upon the trial.   This question of fact was properly submitted to the jury.   Grimes v. Watkins, 59 Texas, 138–139.

2.   If the court had construed the contract upon its face his construction of it from its language and the plain intendment thereof would have been in favor of plaintiff's claim as to how measurements should be made, viz., in embankment.   Wood v. Vt. Cent. Ry., 24 Vt., 608, cited in 65 Texas, 692.

3.   The contract on its face provided for "embankment measure," and the evidence establishes it as the proper mode of measurement in showing that embankment measurement was made, allowed, and paid by defendant upon this and similar contracts until a large part of the work had been done, and that the appellee in ten years' work for appellant had been always paid by embankment measure until the May estimates on this work.   G. H. & S. A. Ry. v. Henry & Dilley, 65 Texas, 685.

4.   An action for money due upon a contract in writing is not barred until four years after the right of action has accrued.   This suit was brought in 1884 for balance due upon a contract in writing, on which right of action did not accrue until August 31, 1882.   Rev. Stats., arts. 3205, 3207.

GAINES, ASSOCIATE JUDGE.—This suit was brought by appellee to recover of the appellant corporation a balance alleged to be due upon a contract for grading a part or its road.   The petition, after setting forth the execution and terms of the contract, alleges that the plaintiff complied in all respects with its stipulations as to five sections of the road and admits a full payment therefor by defendant except in two particulars.   It is averred that by the terms of the agreement the plaintiff was to receive for rock embankment thirty cents per cubic yard, to be actually measured in the embankment, and for "overhaul" on the material in the embankment two cents per cubic yard per hundred feet, to be estimated by the same measurement.   By "overhaul" we understand is meant the distance in excess of one hundred feet that the material was transported.   The

petition admits a partial payment for the rock embankment and for the overhaul on that work.

The defendant pleaded a general denial, and also denied specially that under a proper construction of the contract it was liable to plaintiff in any amount beyond that which had been paid. There were other matters alleged in defense that will be considered in another part of the opinion.

We think the determination of the case in this court depends upon the construction of the written agreement between the parties. There is but little conflict in the evidence. The facts upon the main issues are undisputed. The testimony shows that the rock embankments were made almost wholly from the material taken from the cuts, and that after being placed in the embankment the cubic contents of the embankment was about fifty per cent more than the contents of the excavation from which it was taken; for example, when the excavation in solid rock measured 6000 feet the embankment made with the rock taken from it would measure 9000 feet.

The plaintiff claimed that under the terms of the contract in estimating his compensation both for the enbankment itself and for the overhaul of the rock which composed it the actual measurement of the embankment was to be taken; while on the other hand defendant claimed that he was to be paid by excavation measure. If the defendant's construction of the contract is correct, then it is not disputed that the plaintiff has been fully paid. If, however, the construction claimed by plaintiff be the true one, the evidence shows beyond controversy that he is entitled to the full amount claimed in his petition and awarded him by the verdict of the jury. The testimony of the only witness introduced by defendant as to the quantity of the embankments would have given him more than he claimed, if he was to be paid by the actual measurement of the rock embankments.

The following is the stipulation in the contract as to the compensation to be paid for the work:

"And the party of the second part (appellant) hereby covenant and agree that whenever in the opinion of their chief engineer this contract shall have been wholly completed by the party of the first part (appellee) they will pay in currency for the performance of the same in full for material and labor as follows, to wit: Earth work, per cubic yard, 23 cents; solid rock, per cubic yard, $1.22½; loose rock, per cubic yard, 90 cents; compact gravel, per cubic yard, 35 cents; side hill, excavating rock, per cubic yard, 90 cents; clearing and grubbing, $16 per acre; rock embankment, per cubic yard, 30 cents; average overhaul, 2 cents per yard per 100 feet; freehaul, 100 feet; overhaul outside right of way to include actual haul, 2 cents per yard per 100 feet; 100 feet of embankment free dirt. * * *

"The above price for excavation includes delivery into banks where the extreme haul does not exceed 2000 feet. Where the haul exceeds 100 feet the price for haul on average overhaul, 2 cents per cubic yard per 100 feet. The extreme haul, however, shall not exceed 2000 feet."

If this stood alone we think there could be no question that in estimating the amount to be paid for the rock embankment it should be fixed by the number of cubic yards in the embankments themselves. But the contract refers to certain specifications as being annexed to it and as constituting a part of the agreement. In point of fact no specifications were annexed to the written agreement. The plaintiff testified that he never saw any specifications, and that he knew of none. On the other hand James Converse, who was the chief engineer of the defendant corporation and its superintendent of construction, and who executed the contract on its behalf, testified that the contract and specifications were fully discussed between him and plaintiff at and before the execution of the contract, and that at the time he delivered him a copy of the specifications. The specifications were printed, and as he testified were made a part of all the construction contracts of the company. The specifications introduced in evidence contained this provision:

"The measurements of quantities will usually be made in the cuts or pits from which the material has been taken. When quantities are determined by a measurement of embankments the engineer will estimate the actual quanity, and no allowance will be made for shrinkage. If required by the engineer, rock shall be piled for measurement by the contractor."

In order the better to dispose of the assignments of error, we will first consider what, in the the light of the undisputed facts, is a proper construction of the contract, treating the specifications as a part of the agreement. The uncontroverted testimony shows that for the first month or two after plaintiff began the work the embankments then constructed were actually measured, and that the estimates were made and paid for upon the basis of that measurement. Subsequently Converse directed his subordinates in making the estimates to allow only for the contents of the excavations, and all subsequent estimates were made upon that basis. All succeeding payments were made upon the basis of excavation measurement, but also a deduction was made therefrom of the excess in the previous payments. We think the evidence shows beyond controversy that while the latter estimates were made upon the basis of the cubic contents of the excavations from which the rock was taken, in point of fact the excavations were not measured, and that their contents were arrived at by measuring the embankments themselves, and by deducting from the quantity so ascertained thirty-three and one-third per cent. This was shown by the book of the engineer who made the estimates, which was introduced in evidence. The testimony of Converse tends to

show that the excavations were measured, but in the light of all the evidence it is apparent that he is testifying as to the basis upon which the estimates were made, and not as to the manner in which the contents of the excavations were ascertained.   It does not appear that he witnessed the actual measurement of any part of the work.   We think, therefore, that it may be assumed as an uncontroverted fact that the embankments and not the excavations were actually measured.   Recurring then to the language quoted from the contract, it is to be noted that rock embankment is the only embankment mentioned in the specification of prices. It is possible, therefore, that the provision in the specifications that "the measurement of quantities will usually be made in the cuts or pits from which the material has been taken" was not intended to apply to the rock embankment.

But conceding for the sake of the argument that it was intended to apply to the entire work, we think if in fact the excavations were not measured and the embankments were, then that by the next stipulation the company lost its right to claim any reduction from the actual measurement so made.   In the absence of some proof showing what is meant by "shrinkage" we are of opinion that the stipulation that "when the quantities are determined by measurement of embankments the engineer will estimate the actual quantity and no allowance will be made for shrinkage," must be interpreted to mean that actual contents of the banks were to be paid for and that they were not to be reduced to excavation measure by calculation.   There appears some reason for such a stipulation.   The evidence shows that in blasting solid rock in order to make a cut there was a probability of some loss of material by the fragments being thrown to such distances that they could not be used with profit in constructing the grade.   In estimating by embankment this was lost to the contractor, and hence the object may have been to protect him against this loss in the event resort was had to embankment measurement.   It is to be remarked also that two different engineers in charge of different divisions of the company's construction at the same time, in making their estimates acted upon this interpretation of the contract until they were directed by the chief engineer to adopt a different measurement.   The matter is not free from doubt, but we conclude that the better opinion is that the measurements having been made in the embankments the plaintiff was entitled by the terms both of the contract and of the contract and specifications taken together to payment for the actual cubic yards in the embankments.

The appellant assigns that the court erred in its charge in failing to construe the contract.   The construction of the contract was clearly within the province of the court; but we think it follows from what we have said that the proper instruction would have been that if the embankments were actually measured, both under the contract alone and

the contract and specifications, the plaintiff was entitled to compensation for the full amount of that measurement. Therefore the failure to construe the contract has not in our opinion operated to the prejudice of appellant and is not a ground for reversing the judgment.

So too upon the question of considering the specifications a part of the contract, we think the instructions of the court though correct were deficient in not giving all the law applicable to that issue, and that the charge upon the point asked by appellant, though erroneous taken as a whole, was sufficient to call the attention of the court to the fact that the instruction given was not sufficiently broad. But since we conclude that a proper construction of the agreement, taking the specifications as a part thereof, would have been that if the measurements of the embankments were actually made as a basis for the estimates, and that the plaintiff was entitled to recover compensation for the entire contents of the embankments so measured, it is obvious that no harm has resulted to appellant from the omission of the court in this particular.

The appellant also assigns as error the refusal to give the following instruction:

"The contract itself provides that the price for excavation includes delivery into banks when the extreme haul does not exceed 2000 feet. Under this provision the plaintiff can not recover the overhaul claimed by him unless such overhaul exceeded 2000 feet, and he can not in any event recover for overhaul any more than the measurement of the excavation. If therefore the evidence fails to show that there was an excess over 2000 feet, or if the evidence does not show affirmatively that there was such excess, then the jury will not allow anything to plaintiff for any overhaul claimed in his petition."

The provisions of the contract with regard to compensation for what is called "overhaul" seem to us entirely irreconcilable. There is no testimony in regard to the meaning of the words employed which aids us in their construction. We quote the language in reference to this matter again:

"Average overhaul, 2 cents per yard per 100 feet; free haul, 100 feet; overhaul outside right of way to include actual haul, 2 cents per yard per 100 feet; 100 feet of embankment free dirt. * * * The above price for excavation includes delivery into banks where the extreme haul does not exceed 2000 feet. Where the haul exceeds 100 feet the price for haul on average overhaul, 2 cents per cubic yard per 100 feet. The extreme haul, however, shall not exceed 2000 feet."

The words "the above price for excavation includes delivery in banks where the extreme overhaul does not exceed 2000 feet" seem to indicate that there was to be no charge for overhaul where the material placed in the embankments was taken from the cuts. On the other hand the language "one hundred feet of embankment free dirt" conveys the idea

as strongly as thought can be conveyed by implication that all of the embankment haul over one hundred feet was to be paid for. Taking the first four provisions as to the overhaul together they seem to admit of no other construction. Taking the whole language by itself the construction is involved in the gravest doubt. But it appears from the testimony that in making all the estimates the overhaul from excavation to embankment was in every instance allowed and paid for by excavation measurement. This shows that by the construction of the parties as deliberately acted upon by them the defendant was to pay for the hauling from cut to embankment. This interpretation involved many thousand dollars, and it is unreasonable to conclude that it would have been adopted if it had not been distinctly understood that the parties to the contract so intended. Converse, who made the contract, testified as follows:

"This clause in the contract (referring to the clause reading 'the above price for excavation includes delivery into banks where the extreme haul does not exceed 2000 feet') means that if the haul is over 2000 feet it shall be paid double." He also testified that "if the contract had provided for paying Johnson one dollar and fifty-two and a half cents for all excavations, with two cents for overhaul and nothing for embankment, he would have received just the same for his work as he does under my construction of his contract." This admits that plaintiff was entitled to recover one dollar and twenty-two and a half cents for the solid rock excavation and thirty cents for rock embankment as called for in the contract, and also for the overhaul from cut to embankment. It merely claims the construction that the contents of the excavation were to determine the contents of the embankment.

In Chicago v. Sheldon, 9 Wallace, 50, the Supreme Court of the United States announce this rule of construction: "In cases where the language used by the parties to the contract is indefinite or ambiguous and hence of doubtful construction, the practical interpretation by the parties themselves is entitled to great if not controlling influence." They further say: "The interest of each generally leads him to a construction most favorable to himself, and when the difference has become serious and beyond amicable adjustment it can be settled only by the arbitrament of the law. But in an executory contract, and where its execution necessarily involves a practical construction, if the minds of both parties concur there can be no great danger in the adoption of it by the court as the true one." This is the rule of the Civil Code of Louisiana (D'Aquin v. Barbour, 4 La. Ann., 441) and has been recognized in many cases in courts of common law. See Bish. on Con., sec. 412, and cases there cited.

The language of the contract being doubtful the practical construction deliberately given it by both parties should control its interpretation. It follows that it would have been error to give the charge under consideration.

What has already been said is sufficient to dispose of appellant's fourth assignment of error. The fifth complains that the court erred in refusing to charge the jury in effect that if plaintiff received payment for his work upon the estimates furnished by the company's engineer, including the final estimates, without objection or protest, he could not recover. The charge was properly refused. Johnson testified that he did object and protest at the time the payments were made. This is uncontradicted by any person who was present at the payments.

It is true that Converse testified that he did not object until thirty days after the last payment, but he does not pretend that he was present when the transactions occurred, and Johnson testified expressly that he was not. Johnson was practically uncontradicted upon this point, and it follows that in our opinion there was no evidence which would have authorized the charge requested. It was not shown that evidence to contradict Johnson, if any ever existed, could not have been obtained, and the failure to produce it should be deemed conclusive upon the question. We will say, however, that we think that Johnson's failure to protest after the completion of the work, if he had failed, would not have deprived him of the right to demand the full measure of his compensation under the contract. In the absence of a dispute and a compromise agreement the receipt of a part without objection would not discharge a whole. It may be that if the company had the right at any time to pay Johnson for the work already done and to annul the contract, and that knowing the company claimed that he was to be paid by excavation measurement the plaintiff had recovered payment upon current estimates so made without objection, he would be held estopped to claim a different measurement for all subsequent work. But in order to establish the defense the company should have shown affirmatively that he did not object. This we think it has failed to do. Besides the answer did not set up this defense and to make it available it should have been pleaded.

It was held by this court in the case of this same appellant against Henry & Dilley (G. H. & S. A. Ry. v. Henry, 65 Texas, 658), in deciding upon a contract precisely like the contract in controversy in this suit, that the company's chief engineer did not have the power to finally determine the construction of that agreement. We adhere to that ruling for the reasons given in the opinion in that case.

Appellant also complains of the refusal of the court to give the following charge:

"The fact that the defendant has made a settlement with another contractor by which additional pay was made to such other contractor does not entitle the plaintiff in this case to demand or receive like additional pay."

There was testimony drawn out by the defendant upon cross-examination of one of plaintiff's witnesses that another contractor had been paid

an additional amount after payment upon the final estimates by way of compromise. The charge could have been correctly given. But since it appears that by a proper construction of the contract the plaintiff was entitled to recover, and that the only question for the jury was as to the amount, the appellant has not been prejudiced by the court's ruling.

It is also complained that the court erred in refusing to give the jury an instruction to the effect that if the suit was not instituted within two years after the plaintiff was furnished with the final estimates of his work his action was barred by the statute of limitations. This was an action "of debt where the indebtedness is evidenced by" and "founded upon a contract in writing," and would not have been barred until four years had elapsed from the time the cause of action accrued. Rev. Stats., art. 3205.

Other assignments raise the same questions already considered and need not be discussed.

There is no error in the proceedings of the court below which calls for a reversal of the judgment, and it is therefore affirmed.

*Affirmed.*

Delivered June 7, 1889.