BRANCH T. MASTERSON v. F. W. HEITMAN & Co.

Decided November 11, 1903.

**1.—Contract—Construction of—Evidence.**

The contract under which this suit was brought was ambiguous in its terms as to whether H. & Co., sellers of the machinery to be placed by them, were to superintend and direct the construction of the foundation to be provided by M. The proof showed that H. & Co. accepted M.'s contention that they were to so direct the work, and eventually did so. Held, that H. & Co. can not now be permitted to maintain that it was M.'s duty to construct the foundation without their direction, and that his failure to do so was the cause of delay in the erection of the plant.

**2.—Practice on Appeal—Evidence—Assignment.**

Though the brief of the appellant does not in all things conform to the rules, yet as the issue of the sufficiency of the evidence to sustain the verdict against his claim in reconvention for damages is presented by assignment in the brief, and it also containing statements from the record sustaining that proposition, the appellate court would not be justified in ignoring the assignment. See the opinion for the substance of evidence held to entitle the appellant to recovery on his plea in reconvention.

Appeal from the District Court of Harris. Tried below before Hon. Chas. E. Ashe.

*Hutcheson, Campbell & Hutcheson* and *Masterson & Masterson,* for appellant.

*Ewing & Ring,* for appellee.

PLEASANTS, ASSOCIATE JUSTICE.—Appellees brought this suit against appellant to recover the sums of $146 and $550, alleged to be the unpaid balances of the agreed purchase price of two pumps, with the necessary fittings and appliances, sold by them to appellant, and the further sum of $1410.62, alleged to be the reasonable value of certain goods, wares and merchandise sold and delivered by them to the appellant.

The answer of defendant admitted the balances claimed as due on the purchase price of the two pumping plants, and also admitted the correctness of the larger portion of the open account, but as to certain items in said account, which were specified in the answer, denied that same were purchased or received by defendant. The answer further averred that the pumping plant was purchased by defendant under a contract with the plaintiffs whereby they undertook to install said plant on defendant's farm in Bexar County, and have the same ready for operation by the 1st day of May, 1901, but that plaintiffs failed to comply with their said contract and did not construct the plant within the specified time, and in fact never fully completed the construction of same; that the defendant had to complete the construction of said plant at his own cost and expense in the sum of $300; that by reason of plaintiff's delay in constructing said plant defendant lost the crop upon his

said farm, which was of the value of $15,000, and defendant prayed for judgment against the plaintiffs for the value of said crop and for the sum of $300 expended by him in completing the construction of said pumping plant. To this answer the plaintiffs by supplemental petition replied as follows:

1. They denied that the defendant had sustained any loss or damage by reason of any of the matters alleged by him.

2. They pleaded to the effect, in substance, that the delay was caused by defendant's failure to perform his part of the contract, especially in failing to furnish the foundation for the pump, as in duty bound to do.

3. They further pleaded to the effect, in substance, that if defendant had sustained any loss by reason of any breach on plaintiffs' part, the damaging consequences could and would have been averted by ordinary care on defendant's part, as in duty bound, so far as might be by ordinary effort and moderate expense; and further, that the claim for damages set up was fictitious and without merit, and was asserted merely as a pretense for avoiding payment of the plaintiffs' just demand, and as an excuse for delay in the payment thereof.

The trial in the court below by a jury resulted in a verdict in favor of the plaintiffs for the full amount claimed by them.

The record discloses the following facts: The appellant, being the owner of a farm in Bexar County which he desired to irrigate, procured an engineer to make a topographical survey of said farm, run the levels and prepare the plans for an irrigation plant. After the completion of these plans appellant with a map or sketch of same went to appellees, who were engaged in the business of selling and installing pumps and other machinery for the operation of irrigating plants, and requested them to give him an estimate of the cost of installing a pump of sufficient capacity to furnish the water required by the irrigation plans. Appellant explained to appellees that unless the pump could be installed and put in operation by the 1st of May, 1901, he did not desire to purchase same. Appellees would not make a contract to furnish the pump by the 1st of May until they had sent a telegram to the factory to find if a pump sufficient for the work could be procured at once. After learning that such pump could be procured they agreed with appellant to furnish him with same, and have it installed and in operation by the 1st of May, 1901. The price agreed upon for the pump and necessary fittings and the cost of installing same was $1000. When this agreement was made appellant explained to the agent of appellees, with whom the contract was made, that he intended to use the boiler in use in a gin which he had on his farm to supply the power for running the pump, and that he had on his farm the necessary piping for conveying the steam from the boiler to the pump; that appellant would have all the hauling done, furnish all the unskilled labor necessary for work of installing the pump, and furnish the material for the foundation, and these items were not included in making the estimate of the cost

of the pumping plant. Appellant lives in the city of Galveston, and the farm on which the pumping plant was to be installed was near the town of Lacoste, in Bexar County. Appellees' place of business is at Houston, Harris County.

On the day after this contract was made appellees telephoned appellant at Galveston asking permission to substitute for the pump contracted for one that would cost $100 more. In response to this request appellant met appellees' agent in Houston, and after consulting with him in the matter agreed to the substitution. Some days after this appellees' agent requested appellant to sign a written order for the machinery. This order, so far as it bears upon the issues of this case, was as follows:

"April 6, 1901.—F. W. Heitman & Co., Houston, Texas: You will please order for the undersigned, shipped to Lacoste, on or about April 10, 1901, one 8x12x12x10 Worthington compound duplex pump, with 60 feet of suction and discharge pipe and the necessary fittings, you to furnish a man to superintend erection and setting of pump; I to furnish all foundations and common labor and necessary pipe to make steam connection, which is to be connected by you. Pump guaranteed to have a capacity of 1200 gal. per minute against a 73-foot head, with a 60 h. p. boiler. Pump to be erected by May 1. Cash with order, $550; note due Nov. 1, 1901, $550. (Signed) Branch T. Masterson."

Appellees fully understood at the time the contract was made that the pump was wanted to furnish water for the purpose of irrigating appellant's crop, and that the crop would need the water by the 1st of May. Appellees ordered the pump shipped at once and it reached appellant's farm on April 26th. Nothing further was done by appellees in the performance of their contract until May 1st, when they telephoned the Alamo Iron Works at San Antonio and arranged with that company to have the pump installed. On May 3d the Alamo Iron Works sent a man to the farm to take the measurements for the suction and discharge pipe for the pump. This piping was sent out to the farm on May 13th. On May 11th appellees addressed the following letter to appellant's manager on the farm:

"May 11, 1901.—Mr. Max Reicherzer, Lacoste, Texas: Dear Sir.— We have arranged with the Alamo Iron Works to attend to the setting of the pump sold Mr. Masterson. When you have the material for the foundation and the mason ready, please communicate with them and they will send a man there to superintend the setting of the pump. Mr. Masterson called on us yesterday and is very anxious to get the pump started, and the only delay that can be caused now will be by you not having the material ready. Please take this up with the Alamo Iron Works, who will superintend the erection of the engine. F. W. Heitman & Co."

On May 19th appellant wrote appellees as follows: "I am just in receipt of a letter from the manager on my ranch to the effect that he went to see the Alamo Iron Works about the foundation for the pump

on my plantation west of San Antonio, and they say you have to furnish plans. Under our contract everything was to be completed by May 1st. My whole year's crop is depending on your completing your work. This is a time contract, and while I know that you are loaded with contracts, that will not be any reason for me to lose my year's crop for want of the pumping plant being completed, so I beg to urge you to complete the work at all hazards. I don't want to have a heavy loss for either of us to bear as a result of the delay."

In reply to this letter appellees on May 21st wrote appellant as follows:

"May 21, 1901.—Mr. B. T. Masterson, Galveston, Texas: Dear Sir.— We are in receipt of yours of the 19th inst., and in reply beg to state that we have telegraphed, telephoned and written to your manager at Lacoste to know if he has the foundation material for the pump and a man to lay the foundation. We are ready to send a man at any time if he has the material on the ground. We have been unable to hear from him. The Alamo Iron Works have today advised us that the machinists in San Antonio are all on a strike and we will have to send a man from here. As soon as we can hear from your manager we will send a man there to erect the pump and complete the job. F. W. Heitman & Co."

The telegram referred to in the above letter as having been sent appellant's manager was sent on the same day the letter was written and is as follows:

"Houston, Texas, May 21, 1901.—To Max Reicherzer, Lacoste, Texas: Have you foundation material ready on the ground. Answer. F. W. Heitman & Co."

In reply to this telegram appellant's manager wrote appellees the following letter:

"Idlewild P. O., May 22, 1901.—F. W. Heitman & Co., Houston, Texas: Dear Sirs.—I received your telegram asking me about having the foundation material ready for the Masterson pump. I have been waiting to hear from you to say what is needed. How much rock, brick or sand and cement is needed. Please send me foundation plan and let me know what is needed. Max Reicherzer."

On May 23d appellant wrote appellees as follows:

"Galveston, Texas, May 23, 1901.—Messrs. F. W. Heitman & Co., Houston, Texas: Gentlemen.—Yours of the 21st to hand and contents noted. I am just in receipt of a letter from my manager at Lacoste inclosing your telegram to him asking if the material for the pump foundation was ready and on the ground. He stated that he doesn't know, and has not been informed how much brick or stone or both will be needed for the foundation and has been waiting to hear from you in that regard. Now, if you will either write or wire him the exact material and amount of same necessary for the foundation, it can be placed on the ground all ready upon very short notice. I thought that the very purpose of the trip of the party you sent out there was to decide just such details as this. Now please take the matter up immediately, write

to my manager exactly what you want out there, and it will be on hand, and then send out your man to put up the pump. It is of utmost importance that this pump be put up at once, as there has been no rain there and crops are needing rain very badly. (Signed) Branch T. Masterson."

Appellees in reply to this letter wrote appellant as follows:

"May 24, 1901.—Mr. B. T. Masterson, Galveston, Texas: Dear Sir.— Replying to yours of the 23d inst. beg to state that we have a man at Lacoste now setting your pump and have instructed him that if there will be any delay in getting the brick to put the pump on a timber foundation and get it started at the earliest possible moment. (Signed) F. W. Heitman & Co."

The statement in this letter that appellees then had a man at the farm setting up the pump was not accurate. No one came to the farm to attend to the matter for appellees until May 25th, when the Alamo Iron Works sent out a man to designate the location for the pump and give appellant's manager directions as to the necessary material for the foundation and the manner in which same should be constructed. This man left after giving the necessary directions as to the foundation. The material for the foundation was promptly procured and placed on the ground by appellant's manager, but the foundation could not be constructed because appellees had failed to send anchor bolts with the pump. These bolts are necessary to fasten the pump to the foundation and must be put into the foundation when it is being constructed so that the cement will harden around them and hold them in position. Appellees' agent, who made the contract, testified that the anchor bolts were not a part of the pump but were usually furnished with a pump. Appellees' representative who gave directions as to how the foundation should be built promised to send the bolts out. They did not come, promptly, and appellant's agent went to San Antonio and tried to get them from the Alamo Iron Works but failed. These bolts were not received until June 10th. After their receipt the foundation was constructed promptly and was completed on June 14th and appellees notified that it was ready for the pump to be placed thereon. No one was sent out to put up the pump until June 30th. The work of erecting the pump and putting the same in operation was further delayed for a day or two because a foot valve had not been sent out with the pump. The man in charge of this work placed the pump in position and got it in operation on July 7th, at which time he left appellant's farm, and nothing further was done by appellees under their contract.

As installed by appellees the pump could not be operated so as to furnish water for the irrigation plant. The discharge pipe was four feet too short, and as a consequence did not bring the water to the top of the bank and connect with the conveying pipe. Appellant had this and other. defects in the erection of the pump remedied at a cost of about $300. The evidence shows that appellant's crop was greatly damaged by the failure to irrigate it, caused by the delay in erecting the pump. The

evidence as to the amount of damage is meager and unsatisfactory, but we think there was sufficient evidence on this point to have authorized the jury to have found for the defendant for a portion of the damages claimed by him in event they had found that plaintiff, under the facts in evidence, was responsible for the delay in the erection of the pump.

Appellees' agent who made the contract with appellant testified that the delay in the erection of the pump was caused by the failure of appellant to construct the foundation, and that under the contract appellees were not required to furnish plans and specifications for the foundation nor to superintend its construction.

Upon these facts we are of opinion that the jury were not authorized to find that appellees were not responsible for the delay in installing and putting in operation the pumping plant which they had contracted to furnish appellant, and the assignment of error which assails the verdict as being unsupported by the evidence should be sustained. The order for the machinery, if it be treated as evidencing the entire contract between the parties, is not unambiguous in its terms as regards the foundation for the pump. The clause "1 to furnish all foundations and common labor" does not require a construction which would exclude the idea that the foundation was to be constructed under the direction and in accordance with plans and specifications to be furnished by the appellees.

The language used in the contract being of this ambiguous character the interpretation put upon it by the parties should control in its construction. In the very inception of the work of performing the contract the question as to whose duty it was to give directions as to the foundation arose and appellant claimed that this duty devolved upon appellees. Appellees acquiesced in this construction of the contract and finally sent a man to appellant's farm to give directions as to where and how the foundation should be constructed. In reply to the several letters written them by appellant and his manager urging them to proceed with the work and to furnish plans for the construction of the foundation appellees made no denial of the contention of appellant that it was their duty to furnish these plans, but in all of their letters and telegrams acquiesced in appellant's construction of the contract that he was only required to furnish the material and labor for the construction of the foundation.

Having given this construction to the contract and induced appellant to rely upon their promise to comply with the contract as thus construed, it would be manifestly unfair to permit appellees to now say that it was appellant's duty to construct the foundation without any direction from them, and that his failure to do so was the cause of the delay in the erection of the plant. Galveston, H. & S. A. Railway Co. v. Johnson, 74 Texas, 256; Trust Co. v. Wabash, 34 Fed. Rep., 254; Davis v. Shafer, 50 Fed. Rep., 764; Levitt v. Windsor Co., 54 Fed. Rep., 439.

Appellees object to our consideration of the assignment raising the question of the insufficiency of the evidence to sustain the verdict because appellant's brief is not prepared according to the rules.

Appellant has failed in several respects to comply with the rules in

preparing his brief, and we would probably not be required to consider any of the questions raised, but the issue as to the sufficiency of the evidence to sustain the verdict of the jury against appellant on his claim for damages being raised by assignment presented in his brief, and said brief containing statements from the record showing that said assignment should be sustained, we have concluded that we ought not to refuse to consider the assignment, notwithstanding appellant's disregard of the rules of this court in the manner in which he has prepared his brief. McCarthy v. Life Insurance Co., 7 Texas Ct. Rep., 667; St. Louis S. W. Railway Co. v. McArthur, 70 S. W. Rep., 317.

As the question is presented in appellant's brief it is not apparent that any error was committed by the trial court in the admission in evidence of appellees' account books and shipping receipts. The rules of evidence as to the circumstances under which such evidence is admissible and the purpose for which it can be used are fundamental, and if any error was committed in the introduction of this evidence it is not likely to be repeated upon another trial.

Because in our opinion the finding of the jury that appellees were not entitled to recover anything on their plea in reconvention is not supported by any evidence in the case, the judgment of the court below is reversed and the cause remanded for a new trial.

<em>Reversed and remanded.</em>

ON MOTION FOR REHEARING.

PLEASANTS, Judge.—In overruling appellee's motion for a rehearing we deem it proper to modify or rather to express more accurately the conclusions stated by us in our former opinion filed herein on November 11, 1903. We did not intend in that opinion to hold that under the evidence the trial court should have instructed the jury to find that appellees under their contract with appellant were required to furnish the plans and specifications for the foundation for the pump and to superintend its construction. The jury should look to all the evidence in the case to determine upon whom the duty of furnishing the plans and specifications for the foundation and superintending the construction of same devolved, and if the parties by their letters and acts had construed the contract in this regard such practical construction should be accepted by the jury as the true intent and meaning of the contract. The statement in the last paragraph of our former opinion to the effect that there is no evidence in the record to sustain the finding of the jury that appellees were not responsible for any of the delay in the erection of the pumping plant is justified by the undisputed and unexplained fact that after the foundation was constructed there was a delay of two weeks on the part of appellees in proceeding with the work of erecting the pump. It is not shown, however, with any degree of certainty what proportion of the damage claimed by appellant was caused by this delay.

We have carefully considered the various points urged by appellees against our judgment reversing this case, but have reached the conclusion that it should not be disturbed, and the motion for rehearing is therefore overruled.            *Overruled.*