### DINES BLDG. CO. v. CHERRY.
#### No. 10959.

Court of Civil Appeals of Texas. Dallas.
April 9, 1932.

Rehearing Denied May 7, 1932.

914

McCormick, Bromberg, Leftwich & Carrington, of Dallas, for plaintiff in error.

W. B. Handley and D. H. Hardy, both of Dallas, for defendant in error.

VAUGHAN, J.

The parties to this appeal will be referred to herein as follows: Plaintiff in error as defendant, and defendant in error as plaintiff, being the respective positions said parties occupied in the court below.

The defendant, a private corporation, contends that the court below erred, (1) "that it was error for the court to submit to the jury the construction of the written contract involved in this suit, which was necessarily done by submitting the issue as to whether the same had been complied with"; (2) "not to peremptorily instruct that no recovery could be had on account of the alleged failure to make the basement of the size according to the alleged plans, because the testimony was undisputed that the basement was completed when the original contract was entered into," and "because the testimony as to the cost thereof was indistinguishably commingled with the testimony as to the expense of waterproofing the basement, as to which there was no agreement in the contract"; (3) in refusing "to peremptorily instruct the jury as to claimed omissions, which were open, plain, visible and known to the plaintiff, when he requested extensions and paid his note and interest"; (4) "not to peremptorily instruct in favor of the defendant on account of the alleged failure to place paper under the breakfast room floor, it appearing that plaintiff saw the floor being laid without the paper underneath, and afterwards accepted and moved into the premises, and sought and obtained extensions on his notes and paid one of them"; (5) in refusing "to peremptorily charge in favor of the defendant as to alleged omissions and defects, damages arising from which were first sought to be recovered in a cross-action filed more than four years next after the commission of said alleged defects, and the occurring of said alleged omissions in light of the defendant's plea of the four year statute of limitation."

Plaintiff contracted to purchase the property involved in this suit from defendant on the 5th day of February, 1926, under a contract containing the following provisions material to the determination of the questions presented by this appeal: (a) "Dines Building Company, a corporation, herein called seller, hereby agrees to sell and convey to M. M. Cherry, herein called purchaser, the following tract of land (here follows the description of the land). The purchase price is $21,300.-00, payable $4,000.00 cash and the assumption of five first lien notes, aggregating $14,000.00, being four notes for $500.00 each due in, 1, 2, 3 and 4 years, respectively, and one note for $12,000.00 due five years after date, all bearing interest at 7 per cent. payable semi-annually, and the execution by the purchaser of two notes for $1,650.00 each, maturing eighteen months and three years after date, with on or before. preference, and bearing 8 per cent. interest payable semi-annually; (b) The improvements on said land being in an uncompleted condition, the 'purchaser is insured' by the seller and the seller agrees that it will complete the same according to the original plans, copy of which is hereto attached, and in accordance with the specifications hereto attached, within ninety days from date hereof, and it is agreed between seller and purchaser that said plans and specifications and every detail thereof shall constitute covenants on the part of the seller, and the agreement of the seller to complete the improvements in accordance therewith shall be construed to be material representations to purchaser to cause him to execute this contract." (c) "It is intended that these specifications, taken in connection with the plans and the improvements as they now exist, shall cover the entire completion of the improvements. In case these specifications are silent on any part of the works, the plans, if they cover such part, shall control, but if not, the work as it now exists shall control. All work shall be executed by experienced mechanics and shall be done in a first-class workmanlike manner, and upon completion shall be generally free from all imperfections in both material and workmanship."

Plaintiff instituted this suit on July 30, 1928, to recover against defendant the sum of $5,000, damages alleged to have been sustained on account of, and by reason of, the failure of defendant to perform his contract for and in the construction of the dwelling contracted to be erected and caused to be erected by defendant on the tract of land purchased by plaintiff from defendant as stated herein, namely: In that the conveyance of said tract of land was accepted and the notes

executed on March 26, 1926, on representations made by defendant, that the improvements were substantially completed, but that the contract was in fact breached in the following particulars: (1) That the driveway was defective in both material and workmanship; (2) that the mortar used in the brick and stone work in the building had discolored unevenly, giving a bad appearance; (3) that the basement was not waterproof; (4) that water entered around the front windows; (5) that the roof was defective; (6) that the windows were defective and rattled; (7) that the keen cement in the bathroom was defective; (8) that the slate shingles on the roof were not securely fastened; (9) that the plastered walls were not plumb and true, and the material therein was inferior.

On July 10, 1929, plaintiff filed his first amended original petition which, in addition to the defects listed in his original petition, contained the following allegation: "That the defects aforesaid are so material, substantial, structural and pervasive of the whole work of construction that the improvements on said premises as a whole as actually constructed were, at the time of delivery to plaintiff, and are, reasonably of $10,000.00 less value than they would have been if they had complied with aforesaid representations of the defendants and with the terms of said contract; and the premises, said lot and improvements, at said time, were and are of reasonable market value $10,000.00 less than they would have been if said improvements had been constructed as represented by defendants, and as contracted for, as aforesaid; whereby plaintiff has been damaged in the sum of $10,000.00, for which defendant, Dines Building Company, is liable to him."

On the 22d day of May, 1930, plaintiff filed his second amended original petition, which included two other defects and imperfections in material and workmanship, and, in addition thereto, the following general allegation was made: "That in many other items and features of construction not above detailed the material was inferior and the work was done by inexperienced and unskilled workmen, and not in a manner nor result of skilled or good workmanship: to correct and remedy which would reasonably cost additionally $2000.00. That in the construction of said job as a whole the material used and placed therein by defendant, Dines Building Company, as a whole was of inferior character, nor up to nor in compliance with said representations and the specifications and the contract; and the work done was by unskilled workmen and not in skilled or good workmanlike manner, and not in compliance with the specifications and contract."

Defendant answered the last mentioned petition by a general demurrer, with a special exception to the unitemized damage of $2,000, a general denial and plea that said contract was fully complied with, and that it was substantially complied with, and a further plea that, long after plaintiff was advised, and should have been advised, of the exact facts, he requested and secured numerous extensions of time within which to pay the several notes which he owed, and at the expiration of such extensions had paid interest on both of said $1,650 notes, and paid one of said notes in full, and by way of cross-action against plaintiff declared upon and sought recovery upon the $1,650 note remaining unpaid; that on May 28, 1930, plaintiff filed a trial amendment to meet the special exception addressed to and sustained against said unitemized damage claim of $2,000, and set forth, in detail, twenty-three alleged defects in said building, fixing an amount in dollars of damages alleged to have been respectively sustained as the result of such defects, same totalling $2,-103. On the same day defendant filed a trial amended answer alleging "that the defects and omissions referred to in plaintiff's trial amendment were open, apparent to be seen apparent and known to the plaintiff, and that same were with the knowledge and acquiescence of and at the request of plaintiff omitted or not performed; that long after the exact facts as to all of said matters were known to the plaintiff, he requested and secured from defendant numerous extensions of time on said two $1650.00 notes and the interest thereon; that upon the expiration of said extensions he paid the interest on said notes and one of said notes in full"; and, in addition to the above plea, the following was addressed to said twenty-three defects and omissions, namely: "Said defendant shows that all of said claims are presented and are alleged for the first time in a trial amendment filed on the eve of trial, more than four years next following the accrual of any such causes of action as are set forth in said trial amendment."

The court submitted the case to the jury on a general charge under which the following verdict was returned: "We, the jury, find for the plaintiff in the sum of $2,000.00, with interest thereon at 6% from March 26th, 1926, and we further find for the defendant against the plaintiff for the amount of the note introduced in evidence, together with interest and attorneys fees thereon, according to the face thereof, and for foreclosure of lien against the property described in plaintiff's petition," and judgment was rendered thereon June 5, 1930, in favor of appellee against appellant for $208.62. As neither of the five propositions, upon which this appeal is predicated, call into question the sufficiency of the evidence to sustain the verdict rendered upon, or as to the defects in material, workmanship, and failure to comply with plans and specifications, it is not therefore necessary to review the material testimony adduced or state the controlling facts established thereby bearing

upon the above issues, or to make comment thereon, further than to say that the verdict disposing of said issues is sufficiently supported by probative evidence. The following paragraphs of the court's charge, the only ones bearing on the contract in any respect, are challenged by appellant's proposition, No. 1, supra, namely:

"No. 5: You are hereby further instructed that if you believe and find from a preponderance of the evidence that the defendant Dines Building Company in the construction of said improvements did and made complete performance of its contract with the plaintiff as that term has hereinabove been defined, or that the plaintiff waived the defects in such construction complained of in his petition, then you will find for the defendant as against the claim and demand of the plaintiff.

"No. 6: If you believe and find from a preponderance of the evidence that defendant, Dines Building Company, did not make complete performance of said contract, as the phrase complete performance is hereinabove defined, but that it did make substantial performance of said contract, as the phrase substantial performance is hereinabove defined, then you will find for and account to the plaintiff. * * *

"No. 7: If, from a preponderance of the evidence, you believe and find that defendant, Dines Building Company, did not substantially perform or comply with said contract for erection, construction and completion of said improvements, and you further find that the defects of such construction were and are such as to impair the improvements or structure as a whole and cannot be remedied without doing material damage to other parts of the building in tearing down and reconstructing, then you will find for the plaintiff damage. * * * "

 There is some testimony pro and con as to the construction of the building and as to alleged omissions and defects therein, both as to material and workmanship and failure to conform, in certain particulars, as to plans and specifications. Defendant did not request the court to construe the contract and to inform the jury as to the effect of same as so interpreted; therefore we are of the opinion that said failure on the part of the appellant amounted to such a waiver as to preclude said omission from being now presented as material error. Galveston, H. & S. A. Ry. Co. v. Johnson, 74 Tex. 256, 11 S. W. 1113, 1115; Schulz v. Tessman et al. (Tex. Civ. App.) 48 S. W. 207; Id., 92 Tex. 488, 49 S. W. 1031. That it was within the province of the court to have construed the contract and interpreted the legal effect that should be given to same, and to have submitted issues of fact for the jury to pass upon in reference to the interpretation of the legal effect so made, is not to be questioned; the construction of a written contract being a matter of law, and therefore for the court.

As to what constituted the contract between plaintiff and defendant, the court properly instructed the jury as follows: "The contract between the parties in this case consists of a writing signed by them, together with the specifications and plans referred to by such writing as a part thereof, said writing being dated Feb. 5, 1926." The court defined "complete" performance and "substantial" performance as follows:

"That by the term 'complete performance' as hereinafter used in the charge means performance in every particular of the contract in strict accordance with the language and terms thereof.

"That by the term 'substantial performance' as hereinafter used in this charge means that the performer or contractor must have in good faith intended to comply with the contract, and shall have substantially done so in the sense that the defects are not pervasive; do not continue a deviation from the general plan contemplated for the work and are not so essential that the object of the parties in making the contract and its purpose cannot without difficulty be accomplished by remedying them; such performance permits only such omissions or deviations from the contract as are inadvertent and unintentional, are not due to bad faith, do not impair the structure as a whole, and are remediable without doing material damage to other parts of the building in tearing down and reconstructing."

With the exception of a few terms having a technical meaning, as used by architects and builders, such as "base plugs," "B & B grade," "T & G yellow pine," "colonial glass knob type," "13'/16″X2–1/4," the involved contract is unambiguous, undisputed, and uncontroverted as to its meaning, being in all other respects couched in language of a generally understood and commonly accepted meaning, and notably is this true as to all of its terms and provisions bearing upon the matters in dispute between the parties to this suit, as presented by their respective pleadings. The entire record of all proceedings had shows that nowhere in the pleadings was there any issue raised of controversy or difference between the litigants as to the interpretation, construction or meaning of the terms of the involved contract, furthermore, nowhere in the whole statement of facts is there any controversy, question, or doubt of their meaning raised or presented. That the construction of a written contract is a matter of law, and is therefore for the court, is not a rule to be imperatively followed, in that it is not to be deflected by the application of a rule of reason, has been clearly demonstrated by our Supreme Court in the case of Galveston, H. & S. A. Ry. Co. v. Johnson, supra, in which

Judge Gaines, delivering the opinion for the court, used the following language: "The appellant assigns that the court erred in its charge in failing to construe the contract. The construction of the contract was clearly within the province of the court; but we think it follows from what we have said that the proper instruction would have been that if the embankments were actually measured, both under the contract alone and the contract and specifications, the plaintiff was entitled to compensation for the full amount of that measurement. Therefore the failure to construe the contract has not, in our opinion, operated to the prejudice of appellant, and is not a ground for reversing the judgment." To the same effect is the holding in Schulz v. Tessman, supra. Under the plain terms of the involved contract appellant was obligated to furnish, of a particular class, all of the material and to perform all of the labor necessary to erect, finish, and complete the improvements contracted for, according to the plain terms of the provisions of the specifications and plans attached to, and forming a part of, the involved contract.

Furthermore, we are of the opinion that the failure of defendant to submit a specially requested charge covering his objection to the court's charge, based entirely upon the failure of the court to construe the contract, that is, to determine the legal effect of same, is controlled by the decision of our Supreme Court in the case of Gulf, Colorado & S. F. Ry. v. Conley, 113 Tex. 472, 260 S. W. 561, 32 A. L. R. 1183. In that case Chief Justice Cureton, delivering the opinion for the court, analyzed articles 1971 and 1985, Vernon's Sayles' Annotated Civil Statutes 1914 (now article 2185 and article 2190, R. S. 1925), for the purpose of determining the relative effect of said statutes in reference to what was to be accomplished by observing the provisions of same, and held: "The article [No. 1971] further makes it the duty of the trial court to decide on and instruct the jury as to the law arising on the facts, and to submit all controverted questions of fact to the decision of the jury. Article 1985, relating to the submission of cases on special issues, requires the court to submit all the issues made by the pleadings, and provides that the failure to submit any issue shall not be deemed a ground for a reversal of the judgment unless its submission was requested in writing by the complaining party. These two statutes were enacted to accomplish the same purpose, and we think a failure to submit any particular issue under either statute can be reviewed on appeal only where the record shows a special charge was tendered on that issue." Said proposition is therefore overruled.

■■ As to defendant's second proposition, predicated solely on the ground that "the testimony was undisputed that the basement was completed when the original contract was entered into," we think is fully met and overcome by the following quotations from the record, in reference to which there is no dispute. The concluding paragraph of the written agreement signed by plaintiff and defendant, supra, constitutes a warranty that the basement, as well as all other parts of the improvements, is, or on completion shall be, in accordance with said plans and specifications attached to said agreement. Plaintiff alleged that as an inducement for making the contract defendant agreed and warranted that everything done in the construction up to that time was in strict accordance with the plans and specifications. On cross-examination plaintiff testified: "I did not rely on the fact that the house was built as it was, so far as it was already up. I understood it would be built according to plans and specifications." The plans show the basement, at the southwest corner of the residence, in its south line and its west line, its outside dimensions, to be coincident with, respectively, the south wall and west wall of residence. The undisputed testimony shows that the south wall or dimension of the basement is six or eight feet north, or short of the south wall of the residence. Likewise said plans show two openings or windows in the west side of the basement with dimensions thereon specified. By the undisputed testimony it was established that there is but one opening or window in the west wall, and that it is of dimensions different and less than either opening in the plans. Furthermore, under the heading "Intentions" in the specifications, it is provided: "It is intended that these specifications, taken in connection with the plans and the improvements as they now exist, shall cover the entire completion of the improvements. In case these specifications are silent on any part of the work, the plans, if they cover such part, shall control, but if not, the work as it now exists shall control." The specifications are silent on the question of the dimensions of the basement; the only statement in reference thereto being, to wit: "Basement. Run stairway as desired by purchaser, and provide window and wood coal schute at place shown on plans." However, the plans plainly show the coincidence of the south wall of the basement with the south wall of the residence; and of the west wall of the basement with the west wall of the residence; thus irrefutably establishing the fact that at the time of entering into the contract of purchase it was covenanted that the south and west walls of the basement should coincide with the south and west walls, respectively, of the residence, and that the dimensions of the basement as then agreed on were to be as the plans showed.

The language of the agreement, supra, was a warranty that the basement was, or should be, made to fully comply with the plans as to location and size, and with the specifications in other respects. It was not even contended

by defendant that the basement as constructed conforms to the plans and specifications. Proposition is overruled.

As to appellant's third proposition: We think that the damages claimed on account of the alleged defects in the construction of the basement, in that same was not, as shown by the plans and specifications, contracted to be, included placing same in the wrong location, the failure to make same of the dimensions contracted for, and the failure to use waterproofing in order to prevent the walls from leaking, as each constituted an integral part of the material and labor to be furnished and performed in order to construct and finish the improvements contracted for, in compliance with the plans and specifications; such performance being necessary in order to have constructed the basement without breaching the warranty provision of the involved contract.

The following is the testimony on which this proposition is based: "As to whether the basement can now be built to the size called for by the plan without impairing the house, and the structure as a whole, well, it would be very hard to do it now; it couldn't be built as it is shown on here. It would be almost impossible to get the wall of your basement directly under the bottom of your house. You could get it up to that; but you would have an awfully hard time getting it under it! Assuming that the basement wall could be put underneath that foundation wall by increasing the size of the basement, and taking into consideration the water proofing of the basement, the reasonable cost of doing the work should be about $1000."

We have not been able to reach the conclusion that the testimony as to the costs to make the basement the size contracted for was so indistinguishably commingled with the testimony as to the expense of waterproofing the basement as to destroy the probative effect of same, in that same could not be applied with specific certainty to either one of said items. This because each item co-ordinates with the other to constitute the damages sustained by plaintiff on account of the breach of contract for and in the construction of the basement. Proposition overruled.

Defendant's fourth proposition is based upon the proceedings had on its plea of waiver, namely: "Defendant shows that long after plaintiff was advised and long after he could have advised himself of the exact facts which he claimed were misrepresented to him by defendant, he requested and secured from defendant numerous extensions of time within which to pay the several notes which he owed the defendant, and that upon the expiration of such extension he paid interest on the same several notes and one of said notes in full, all of which constituted a waiver of any representations made to him, had the same

been made, which is not admitted but denied."

This plea clearly is addressed exclusively to representations made to appellee as to the character and quality of workmanship and materials done and placed in the construction prior and up to the time of the execution of the involved contract. The obligations of the contract to perform, and after promises to make good said obligations, cannot be classed as representations or misrepresentations. The items here under consideration, being all finishing work arising long after the execution of the contract, should not be treated as within the effect of said plea, but any doubt will be resolved in its favor for the time being.

Appellee testified: "I kept bringing these things up with Mr. Dines for two long years, and he led me to believe he did fix some things and led me to believe he would fix the others; and I decided not to pay that note off, and I sparred for time. I paid all my interest on the first lien note and Mr. Craft would come in there and talk me out of it, and I then paid the first note. And then after that I filed suit, and then I talked to Dines and Craft. I was going by what they told me. Didn't know a thing about building a house. He told me he could fix it and would send some men there to fix it. Well, I didn't know. They had been giving me a lot of stuff on this and the other. They did send a man over there. They kept promising all through the two years that they would fix that condition and I kept believing it. I was hoping that they were going to fix the house; and when I found that they had gone down and posted notices and I heard it was still in Mr. Dines' name and Mr. Dines was not good for a contract, I decided to go ahead and file suit."

That appellee never voluntarily, consciously, or intentionally waived any nonconformity with the contract, plans, and specifications was settled by the verdict of the jury rendered under the following charge of the court: "You are instructed that if you find and believe from the evidence that the plaintiff, M. M. Cherry, had knowledge of the permanent character of any of the defects or omissions complained of by him, if any there was, at any of the times he requested and received from the defendant, Dines Building Company, extensions on the $1650.00 note first maturing, and extensions as to the interest on both of said notes, or, if you find and believe from the evidence that the plaintiff, M. M. Cherry, could, by the exercise of ordinary diligence, that is, the diligence that would have been exercised by a person of ordinary prudence under the same or similar circumstances, have discovered the permanent character of any of such defects or omissions complained of by him, if any of such character you find, then as to any or all

such defects or omissions, if any, of which he had knowledge at such time or which could have been so discovered, you will return a verdict in favor of the defendant, Dines Building Company, and in this connection you are instructed that if you find and believe from the evidence that the plaintiff, M. M. Cherry, was at or prior to the time he requested and received such extensions in possession of facts which put him upon inquiry with respect to such injury before agreeing to such extension and if he failed to do so he is as much bound as if he had knowledge thereof."

Said proposition is therefore overruled.

■■ Defendant contends, under its sixth proposition, that the several items pleaded in plaintiff's trial amendment as constituting omissions and defects arising from the breach of the contract were barred by the four-year limitation statute (Rev. St. 1925, art. 5527), and that as to said items the court should have peremptorily instructed the jury to find in favor of defendant. Conceding that the following was a sufficient plea of said statute of limitation, namely: "Said defendant shows that all of said claims are pretended and are alleged for the first time in a trial amendment filed on the eve of trial, more than four years next following the accrual of such cause of action as are set forth in said trial amendment," we do not believe this proposition can be sustained.

Plaintiff, by his original petition, sought to recover damages therein alleged in the amount of $5,000 on account of the breach of the involved contract, specifying certain items as constituting the breach thereof amounting to said sum; the suit was therefore based upon said contract. On July 10, 1929, plaintiff filed his first amended original petition, in which the sum of $10,000 was claimed for the breach of said contract, as representing the difference between the value of the improvements as constructed and what the value thereof would have been if same had been constructed in accordance with the terms of said contract. On May 22, 1930, plaintiff filed his second amended original petition in which additional items were listed as breach of the contract, and, in addition thereto, contained a general allegation, by which the sum of $2,000 damage was claimed. On a special exception being sustained to said general allegation, plaintiff filed his trial amendment, listing, specifically, the items constituting the defects in material and workmanship. We are of the opinion, and so hold, that said general allegation was not subject to a general demurrer when construed in connection with the other allegations of the petition, as the detailed itemization in the trial amendment would be provable by the same evidence and would not be subject to limitation to which the original

undetailed allegation was not subject. Avery et al. v. Mansur & Tebbetts Implement Co. et al. (Tex. Civ. App.) 37 S. W. 467. Furthermore, Peterman's testimony was to the effect that the improvements as they are and were on March 26, 1926, were worth $10,000; that, if they had been constructed according to the contract, plans, and specifications, they would, on the same day, have been worth $18,500. On the other measure of damages, his total cost of all repairs by detail to make the job conform to the requirements of the contract was $9,762.50. Plaintiff's allegations laid the foundation for this measure of damages, and the court charged that, if the jury found that the improvements could not be made to conform to the contract without tearing down parts and rebuilding, the damage, in substance, would be the difference between the value as it was and what the value would have been if the construction had been according to the contract. Atkinson v. Jackson Bros. (Tex. Civ. App.) 259 S. W. 280; Id. (Tex. Com. App.) 270 S. W. 848, 38 A. L. R. 1377. It is reasonable to assume that the verdict for $2,000 was rendered on this rule for the measure of damages. In addition to the testimony of Peterman, Carmichael, a witness for plaintiff, testified that it was $10,000. On the repairs measure of damages the undisputed testimony was that to repair the brick work to conform to the contract would reasonably cost $1,275, to make the painting to conform to contract would cost $650, and that the reasonable cost to conform the plastering work would be $1,500, and to conform the roof would cost $450. Said additional specification of items of damages being based upon the contract, for the breach of which suit was originally instituted, and the amendments thereto being simply to enlarge upon the particular items wherein said contract was breached, which would have been proper allegations in the count seeking recovery upon the alleged difference between the value of the improvements as constructed and what the value of same would have been if same had been constructed in accordance with the contract, said trial amendment did not allege a new or an additional cause of action. Said proposition is overruled.

■ Plaintiff's independent proposition of fundamental error committed against him by the court in not rendering judgment in his favor for $438.02 instead of $208.50, we think, is well taken. Each one of plaintiff's petitions contains in effect the following provision: "And that the amount due defendant on said second $1650.00 note as principal be offset against the plaintiff's said damages as of the date of said note, without interest on said note, reducing plaintiff's judgment against defendant by the face amount of said note, as of its date, with lawful interest on the balance of such damages from said March

26th, 1926." Under the court's instructions as to the form of their verdict if they found damages for plaintiff and in obedience to same they found for defendant against plaintiff the amount of said $1650.00 note "together with interest and attorneys fees thereon, according to the face thereof." Said note on its face called for interest at 8 per cent. per annum from date March 26, 1926, and 10 per cent. attorneys' fees. On this verdict, under these allegations and the facts, the court rendered judgment for plaintiff for $2,503.33, being $2,000 plus 6 per cent. interest for four years, two months, and nine days to the date of the judgment, June 5, 1930, and for defendant against plaintiff for $2,294.83, principal, interest, and attorneys' fees on said $1,650 note; offsetting defendant's $2,294.83 against said sum of $2,503.33, and rendered judgment for plaintiff against defendant for only $208.50. This, we think, was error, as the principal sum of said note should have been applied as a credit against the $2,000 damages awarded by the jury in favor of plaintiff as of March 26, 1926, and judgment should have been in favor of plaintiff for the difference, namely, $350, plus 6 per cent. interest per annum thereon from March 26, 1926, to the date of judgment, interest amounting to $88.02, in all, $438.02. Therefore said judgment is reformed in this respect, and plaintiff is awarded a recovery against defendant for the sum of $438.02, with 6 per cent. interest thereon from June 5, 1930, and in all other respects the judgment of the court below is affirmed.

Reformed and affirmed.