JAMES N. FISK ET AL. v. MIGUEL FLORES ET AL.

1. DEED BY HUSBAND FOR WIFE'S SEPARATE PROPERTY.—The deed by the husband in 1834 for the wife's separate property passed no title.
2. RECITALS in deeds bind both parties thereto and parties claiming under such deeds.
3. DONATION.—Property received by husband or wife by donation forms part of the separate estate of the party receiving the donation.
4. SAME.—A donation in remuneration for or in compensation for services rendered by a married woman to the donor is not a part of the community estate, nor could real estate so received be disposed of by the husband.

APPEAL from Bexar.   Tried below before the Hon. George H. Noonan.

*I. P. Simpson,* for appellants.

*S. G. Newton,* for appellees.

MOORE, ASSOCIATE JUSTICE.—This suit was brought by the appellants for title and possession of a lot in the city of San Antonio, granted in February, 1818, by Don Antonio Martinez, colonel of the royal army, and military and political governor of the province, to Maria Inez de los Santos. The validity of this title is not controverted. Both appellants and appellees seem to claim under it, and mutually maintain that they have respectively shown by the chain of transfers upon which they rely the better title to that part of the lot in dispute. It is also claimed by both of them that they have respectively acquired title as against the other by prescription, irrespective of any question as to the superiority of their titles apart from the facts connected with the occupation and possession of the lot.

While both appellants and appellees claim under the grant to de los Santos, neither of them connect themselves with the title to her by a consecutive chain of written transfers, or by direct and positive proof of the donation of the lot by her to her daughter Sebastiana Vela, upon which the parties on both sides seem to count in support of their respective titles.

It appears from the record that after the grant of the lot to de los Santos she improved and resided upon it for a time at least, and that at the time of her death, about 1830, she was living upon it with her daughter Sebastiana Vela and her husband Jose Dolores Ocon ; or they were living upon it with her. After her death Sebastiana and her husband continued upon the lot, and although de los Santos left a number of other heirs besides Sebastiana, who must have been fully informed of the fact of the grant of the lot to her, none of them have ever claimed any interest in it by inheritance or otherwise, or controverted or questioned the right of Sebastiana Vela to it, or that of her and her husband, Dolores Ocon, as the case may be.

Appellees claim under a deed from Ocon to Francisco Chaves, dated June 28, 1834, for that part of the lot in dis-

pute.    Ocon and his wife Sebastiana Vela continued in the possession and occupation, certainly of that part of the lot not included in the deed to Chaves, until his death, which occurred some time in the year 1834, and Sebastiana Vela continued in like possession until the 4th of August, 1840, when she sold and conveyed the entire lot to Dona Guadalupe Ruiz, from whom appellants claim.

For the proper disposition of the question of title, irrespective of the claim by prescription, it will suffice to say that as appellants deraign their title under said Guadalupe Ruiz, and appellees under said Francisco Chaves, and as no controversy seems to be made as to the regularity of the mesne conveyances by which they respectively derive their title from these parties, the determination of the question as to which of the parties had the better right to the lot depends upon the fact whether the lot was the separate property of Sebastiana Vela, or the community property of said Vela and her husband Ocon.

Appellees made no effort whatever to show any separate or individual title to the lot in Ocon.   His right to sell seems to be based solely upon the construction and effect which it is insisted must be given to the recitals in the deed from Vela to Ruiz, offered in evidence by appellants, and under which, as we have said, they claim to derive their title.    If Sebastiana acquired whatever title she had to the lot as an heir of her mother, Maria Inez de los Santos, it was, of course, her separate property, and the deed from Ocon to Chaves, in which she did not join, was inoperative and void.    And whether she inherited the entire lot, or an undivided interest in it, the appellants, if they have acquired the title or interest which she inherited, could recover the entire lot from the appellees, who, under such circumstances, could be viewed only as mere naked trespassers.    (Presley *v.* Holmes, 33 Tex., 476.)

But as the recitals in the deed under which a party claims is evidence against him, and as by the recitals in the deed

from Vela to Ruiz it appears that she did not claim the lot as heir of de los Santos, it is necessary to inquire whether, if the lot passed from de los Santos, as alleged in Vela's deed to Ruiz, it was community property of Vela and Ocon, or her separate estate. The recital to which reference is had reads as follows, viz: "And I, Maria Sebastiana Vela, for myself and for my heirs, by this bargain and grant to and with the said Da. Guadalupe Ruiz, and her heirs and assigns, that I am now the owner of said piece of land by donation made to me in compensation for various services by my mother, Maria Inez de los Santos, who was possessed of a good and indefective right and title to it."

That a donation pure and simple vests in the donee a separate estate in the property donated, cannot be questioned. It is insisted, however, that this is not the character of this donation. It was made, says the deed, in compensation for various services. This, it is said, shows that the lot was acquired by an onerous title. And if thus acquired during marriage, it is claimed it belongs to the community, whether the services were rendered by the husband or wife.

"A donation," as defined by the civil law, "is a contract whereby a person gratuitously dispossesses himself of something by transferring it to another to be his property, who accepts it." (3 Browne's Rom. Law, 119.) It is a contract or agreement, and must be accepted by the donee, otherwise it would be a mere offer. It must also be gratuitous, because otherwise it would be a sale or exchange. (Id.)

"The donation *inter vivos* is an act by which one gives to another irrevocably and gratuitously some property of which he becomes the immediate owner." (Schmidt Civil Law, 201.)

"The first beneficial contract to one party only is donation or the benevolent act which arises from nobleness and

goodness of heart, when it is made freely and without any compensation." (1 White's New Recop., 154.)

"*Donatio inter vivos,* otherwise called a *proper* gift, then is when one out of mere liberality bestows a thing upon another, there being no law to compel him to it." (2 Colquhoun Rom. Civil Law, 109.)

It is also quite evident that it is entirely consistent with the nature of a title by "donation" that the donor may be moved by reason of services rendered by the donee to make the donation, and that it is induced by such consideration does not take from the transaction the character of "a donation."

Says the author from whom we have last quoted: "*Donatio inter vivos* is either *relata* or *simplex;* that is, *absoluta,* and this latter may be said to be *remuneratoria* or *modalis sub modo.* Thus, what is given with reference to some service done is called *relata,* if out of pure liberality, without any reason being assigned, *simplex* or *absoluta;* but should the object be given by way of reward for service done it is called *remuneratoria;* lastly, if anything be given to a person with the view that he first do something that shall benefit himself alone, it is termed *donatio modalis,* or *sub modo.*" (2 Colquhoun Rom. Civil Law, 109.)

That a donation in remuneration or compensation for services rendered by a married woman to the donor is not a part of the community estate of the spouses, is plainly shown, we think, by the following citation of Escriche. In specifically enumerating property acquired by husband or wife, which forms a part of the ganancial estate, and such as does not, he says: "No se cuenta entre los bienes gananciales. * * * * * Los donaciones remuneratorias que se hacen á uno de los consortes por sus méritos peculiares," (Leyes, 1 y. 5, tit. 4, lib. 10, Nov. Rec.;) *i. e.,* remunerative or compensatory donations which are made to one of the consorts for his or her individual merits form

no part of the community estate. (Escriche Diccionario de Legislacion, 367.)

We conclude, therefore, that the recital in the deed from Vela to Ruiz does not show authority in the husband, Ocon, to alienate the lot, from which it follows that appellees failed to show title to that part of it which they claimed by the deed upon which they relied.

It may, however, be said that though recitals in deeds are evidence against the parties claiming under them, it does not follow that they are so in their favor. And, therefore, appellants also failed to prove title for want of evidence to establish the truth of the alleged donation from de los Santos to Vela. To this it is sufficient to say, as appellees cannot be permitted to affirm and deny the recital in the deed at the same time, and having relied upon it in support of their deed from Ocon, they are bound by it. Aside from this view of the matter, we think the long-continued possession of the lot by Vela and those claiming under her subsequent to the death of her mother, without claim by or on behalf of any of her other heirs, is sufficient to warrant the presumption, at least as against strangers, of the validity of the title under which it has been thus held.

It may be a useless consumption of time to comment upon the facts to show that they do not support or warrant the verdict on several of the most important issues submitted by the court to the jury on the question of title by limitation or prescription.

The evidence seems to have been in several particulars manifestly contradictory and conflicting, and, as presented in the statement of facts, confused and, in some matters, difficult to be understood as to its true import and meaning. We think, however, it is evident that it entirely fails to show a continued possession by appellees, or those under whom they claim, for sufficient length of time either to give title by prescription or bar appellant's right to recover.

But as the facts on another trial may be altogether different from these shown by the present record, we deem it useless to comment upon them.

The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.