**HENDERSON v. BOOK et al.**

No. 10493.

Court of Civil Appeals of Texas.
San Antonio.

April 12, 1939.

Rehearing Denied May 17, 1939.

————◆————

Harold D. Putman and William H. Shireman, both of San Antonio, for appellant.

H. G. Gwinnup, of Houston, Storey, Sanders, Sherill & Armstrong, of Dallas, and W. E. Pope and W. B. Weaver, both of Corpus Christi, for appellees.

SLATTON, Justice.

This is a suit in trespass to try title, tried to the court, in the 117th District Court of Nueces County. Title to the minerals was the only controversy. The judgment vested title to (seven-eighths)

oil, gas and mineral leasehold estate as follows:

An undivided ½ of ⅞ to Costa Oil Company

An undivided ¼ of ⅞ to Aztec Oil & Royalty Company

An undivided ¼ of ⅞ to Ralph A. Johnton

An undivided ⅟₃₂ royalty interest (nonparticipating) each to H. B. Book and H. C. Holly.

The fee simple title to the surface, subject to the lease, ⅟₁₆ royalty interest, the same being an undivided one-half of the landowner's ⅛ royalty interest in and to said minerals, and also the possibility of reverter of the oil, gas and mineral lease, were vested in Henderson.

Henderson has appealed.

R. R. Graham was the common source. Henderson's chain of title includes the following instruments:

1. Warranty deed from R. R. Graham and wife to R. P. Tindel, dated May 31, 1926, which contains this clause:

"Know All Men by These Presents: That we, R. R. Graham and Emmie C. Graham of the County of Nueces, State of Texas, for and in consideration of the sum of Ten ($10.00) Dollars to us in hand paid by R. P. Tindel, the receipt of which is hereby fully acknowledged and confessed, and for other good and valuable considerations to us moving. It is hereby agreed and understood that as a part of the consideration herein the grantor shall receive One-Sixteenth (⅟₁₆) interest of oil, gas or other minerals on the property described below, should there be any;"

2. Deed of trust from R. P. Tindel to Bert Taylor, trustee, for the benefit of Carrie Brown, dated August 4, 1926, as security for a note in the principal sum of $1,500.

3. Warranty deed from R. P. Tindel to H. N. Whaley, dated May 5, 1927, containing this clause:

"It is understood and agreed that said forty (40) acres is conveyed subject to reservation of ⅟₁₆ royalty retained by R. R. Graham and wife, Emmie C. Graham, in deed dated May 31, 1926, and recorded in Vol. 168, p. 8, Deed Records of Nueces County, Texas."

4. Correction deed from R. R. Graham and wife to H. N. Whaley, dated April 15, 1932, containing this clause:

"Know All Men by These Presents: That we, R. R. Graham and wife, Emmie C. Graham, of the County of Jim Wells, State of Texas, for and in consideration of the sum of ten and No/100 dollars and other good and valuable considerations to us in hand paid by H. N. Whaley, the receipt of which is hereby fully acknowledged, and confessed; and for the purpose of correcting an error appearing in deed from us to R. P. Tindel, of record in Vol. 168, pages 8 and 9, of the deed records of Nueces County, Texas, wherein said conveyance recites that we did

"'Grant, sell and convey unto the said R. P. Tindel, of the County of Nueces, State of Texas, all that certain undivided interest in and to' the lands described in said deed and herein further described below, whereas, it was our intention and purpose to convey to and vest in the said R. P. Tindel, his heirs and assigns, the entire undivided fee simple title to said property, and said error crept into said deed by mistake and error on the part of the conveyancer drafting said deed to the said R. P. Tindel, it being our intention herein to correct said original deed and conveyance by the execution of this deed of conveyance for the purpose of vesting in the said H. N. Whaley, all our right, title and interest, in and to said land, the same being the entire undivided fee simple title thereto, except the mineral reservations retained by us in said deed of record in Vol. 168, pages 8 and 9 of the said Nueces County deed records, which reservation is recited in said deed as follows:

"'It is hereby agreed and understood that as a part of the consideration herein, the grantors shall receive one-sixteenth (⅟₁₆) interest of oil, gas or other minerals on the property described below, should there be any,'

"Have granted, sold and conveyed, and by these presents do grant, sell and convey unto the said H. N. Whaley, grantee of the said R. P. Tindel, by deed of record in Vol. 172, page 194, of said deed records of Nueces County, Texas, all that certain lot, tract or parcel of land, lying and being situate in the County of Nueces, State of Texas, and being more particularly described as follows:—"

5. Deed of trust from H. N. Whaley and wife to J. O. McCaskill, trustee, dated August 4, 1928, for the benefit of Carrie Brown, to secure a note for $1,500.

6. Warranty deed from H. N. Whaley and wife to Terry F. Long, dated April 16; 1932, wherein Long assumed the payment of a note in the principal sum of $1,500 payable to the order of Carrie Brown, and containing this clause:

"This conveyance is executed subject to a reservation of 1/16 royalty interest retained in the deed from R. R. Graham and wife of record in Vol. 168, page 8, of the Deed Records of Nueces County, Texas."

7. Deed of trust from Terry F. Long to Chas. F. Guenther, Jr., trustee, for the benefit of Carrie Brown, dated April 18, 1932, to secure the payment of a note in the sum of $1,500.

8. Certain pleadings in Cause No. 13390 –B, entitled, Carrie Brown v. Terry F. Long and H. N. Whaley, which sought judgment and foreclosure of note and deed of trust dated April 18, 1932.

9. Decree of the Court in said cause.

10. Order of sale dated November 3, 1934, and sheriff's return.

11. Sheriff's deed dated December 11, 1934, containing this clause:

"Now, therefore, in consideration of the premises aforesaid, and of the payment of the said sum of Nine Hundred Dollars, the receipt of which is hereby acknowledged, I, Paul Cox, Sheriff as aforesaid, have Granted, Sold and Conveyed, and by these presents do Grant, Sell and Convey unto the said Carrie Brown, all of the estate, right, title and interest which the said Terry F. Long and H. N. Whaley had on the 9th day of June, 1934, or at any time afterwards, in and to the following described premises, viz:" (Describing the land).

12. Special warranty deed from Carrie M. Brown to N. V. Henderson, dated March 11, 1936.

13. Quitclaim deeds from Terry F. Long and wife and H. N. Whaley and wife to N. V. Henderson, dated May 16 and 17, 1936, respectively, which were executed in consideration of the release of personal judgment obtained against them in cause No. 13390–B by Carrie Brown.

The chain of title of Book and Holly include the following instruments:

Deed from R. R. Graham and wife to L. W. White, trustee, dated October 25, 1930, containing the following clause:

"Our 1/2 Royalty interest in and to all of the oil, gas and other minerals in and under and that may be produced from the following described lands situated in Nueces County, Texas, to-wit:" (Describing the land).

Deed from L. W. White, trustee, to H. B. Book, dated April 2, 1936.

Deed from L. W. White, trustee, to H. C. Holly, dated April 8, 1936.

The chain of title of Costa Oil Company, Aztec Oil & Royalty Company and Ralph A. Johnston, in addition to the title of Henderson, includes the following instruments:

Contract for oil and gas lease from Carrie Brown to the Aztec, dated February 28, 1936.

Oil and gas lease from N. V. Henderson and wife to Aztec to 7/8 working interest in and to oil and gas and other minerals with warranty, and containing the following clause:

"As an additional consideration, lessee agrees to pay lessor, their heirs or assigns, the additional sum of $100.00 per acre out of one-fourth (1/4) of seven-eighths (7/8) of the revenue from the first oil, gas and other minerals produced from said property, if, as and when produced from said property under the terms of said lease and in no other way."

Assignment of the above lease from Aztec to Ralph A. Johnston, dated August 13, 1936.

Assignment of the above lease from Aztec and Johnston to Costa Oil Company, of an undivided one-half interest in and to said oil and gas lease.

The Oil Companies and Johnston offered in evidence a receipt duly acknowledged by Henderson and wife, whereby they acknowledged receipt of the sum of $4,000 paid to them out of 1/4 of 7/8 of the first oil, gas, or other minerals produced from said property.

The appellant contends that the reservation contained in the Graham deed excepted therefrom an undivided 1/16 mineral interest in and to the oil and gas and that such interest entitles the owner thereof to a participating interest to 1/16 of the oil and gas on other minerals in place; that such reservation was made in plain and unambiguous language and the court should not consider recitals in subsequent instruments in the chain of title to determine the meaning of such reservation. He further contends that the deeds of Whaley and Long do not attempt to define the

Graham reservation, since such deeds specifically refer to the Graham deed and are thereby controlled by the reservation.

He further contends as against Book and Holly that he is not estopped by the recitals contained in the deeds of Tindel and Whaley, because Book and Holly were not parties thereto and do not claim under such deeds.

On the other hand, appellees contend that the reservation of the Graham deed, as written and as construed and interpreted by the parties themselves in their chain of title, is a 1/16 royalty interest, non-participating in the leasing rights, bonuses and delay rentals.

It is not necessary for us to pause and give literal construction to the true meaning of the reservation in the Graham deed, because the parties to this record, by subsequent written instruments, under seal and in their chains of title, have construed and interpreted the meaning which they have placed upon it. It has been many times held that recitals in deeds bind both parties and parties claiming under such deeds. Fisk v. Flores, 43 Tex. 340; Havard v. Smith, Tex.Civ.App., 13 S.W.2d 743, writ refused, and authorities there cited.

Tindel construed the reservation to be a 1/16 royalty on May 31, 1926.

Whaley interpreted the reservation to be a 1/16 royalty interest on April 16, 1932.

Graham construed his reservation in his deed to White, trustee, as "Our 1/2 Royalty Interest in and to all of the oil, gas and other minerals, etc." This recital binds Graham and those claiming under him, that the reservation described a royalty interest. The predecessors in title of Henderson, that is, Tindel, Whaley and Long, through the recitals in their deeds, construed the reservation of the Graham deed to be a royalty interest. Graham recognized such an interpretation of the interest through his deed to White, trustee, as aforesaid. Therefore, when Henderson came into the title, on March 11, 1936, all parties in the respective chains of title had theretofore recognized the Graham reservation to be a royalty interest. Under his special warranty deed Henderson became vested with the fee simple title to the land, subject to a royalty interest outstanding in the grantees of R. R. Graham. Subsequently, on April 1, 1936, Henderson, by the execution and delivery of an oil and gas lease, conveyed with warranty 7/8 working interest in and to the oil, gas and other minerals under the land to the Aztec Oil & Royalty Company. Aside from the general provisions of the lease showing his intent to convey a full 7/8 working interest, there is contained in the lease as an additional consideration the sum of $100 per acre, to be paid out of one-fourth of the 7/8 working interest to Henderson by the Oil Company. The receipt duly signed by Henderson and wife on February 16, 1937, acknowledged the payment of said additional consideration out of one-fourth of the 7/8 of the first oil, gas and other minerals produced from said property.

Therefore, under the rules announced in the above cited cases, Henderson, through recitals in deeds of his predecessors in title and by his own solemn written instruments under seal, cannot be heard to say that the reservation contained in the Graham deed is other than a royalty interest.

The appellant argues that the deeds of Tindel and Whaley are not necessary to his chain of title, hence the recitals contained therein are not binding on him. It must be noted that Carrie Brown did not foreclose her mortgage against Tindel. She foreclosed against Whaley and Long. Therefore, Tindel is the owner of the equity of redemption, and not being a party to the foreclosure suit brought by Carrie Brown, the foreclosure sale operated only as an equitable assignment of the mortgage to the purchaser. Browne v. King, 111 Tex. 330, 235 S.W. 522. We are of the opinion that such deeds are in the chain of title of Henderson, and that he is bound by the recitals therein contained. Murphy v. Jamison, Tex.Civ.App., 117 S.W. 2d 127, writ refused.

Appellant by his sixth proposition contends that he is not estopped by the construction placed upon the reservation contained in the Graham deed, by the recitals in the deed from Graham and wife to L. W. White, trustee, and the deeds from the trustee to Book and Holly, since such deeds could in no way increase the estate created by such reservation, insofar as R. P. Tindel and his privies are concerned. This seems to be true with the deeds from White, trustee, to Book and Holly, but the same cannot be said of the deed from Graham and wife to White, trustee. After the Tindel deed to Whaley, dated May 5, 1927, wherein they agreed

that the Graham reservation was a $\frac{1}{16}$ royalty interest, such agreement was binding on them and all parties claiming under them. Then, when Graham, by his deed of October 25, 1930, interpreted his reservation as a royalty interest and conveyed the same to White, trustee, he bound himself and those claiming under him that such reservation was a royalty interest. Thus it is seen that all parties in interest have agreed either through their own deed, or through recitals contained in deeds under which they claim, that the reservation of Graham was a royalty interest.

The appellees do not contend that the conveyance from Graham wherein the interest of Graham was described as "our one-half royalty interest," increases the quantum of the estate conveyed more than the same was interpreted to be by Tindel and Whaley and those claiming under them. In fact, the trial court adjudged Book and Holly to be vested with the Graham interest; that is, a $\frac{1}{16}$ royalty interest payable out of the landowner's one-eighth, as retained in the lease of Henderson to the oil company, from which Book and Holly have not appealed.

The reservation in the Graham deed to Tindel was, by recitals in subsequent deeds and before the purchase of Henderson, said to be a $\frac{1}{16}$ royalty interest. Henderson purchased with these recitals in his chain of title. By his oil and gas lease he attempted to convey, and did convey, a determinable fee in and to $\frac{7}{8}$ of the oil, gas and other minerals under the land with warranty. According to the recitals of the deeds in his chain of title there was outstanding a $\frac{1}{16}$ royalty interest and under his purchase he received the entire fee with this exception. In his executed lease it is said: "In case said lessor owns a less interest in the above described land than the entire and undivided fee simple estate therein, then the down payment and royalty herein provided for shall be paid the said lessor only in the proportion which his interest bears to the whole and undivided fee."

Henderson accepted the additional consideration above mentioned under the lease wherein he conveyed the full $\frac{7}{8}$ of the oil, gas and other minerals; therefore, under such lease he is estopped to claim as against his lessee and its assigns that the interest he attempted to convey is any less. Klein v. Humble Oil & Refining Co., 126 Tex. 450, 86 S.W.2d 1077.

The facts of the present case are ruled by the principles of law announced in the Klein case. It is apparent from what we have said that the trial court applied those rules to the facts of this case, therefore, it is our duty to affirm the judgment rendered by the trial court.