Dalton MOORE et ux., Appellants,

v.

J. A. WIMBERLEY et al., Appellees.

No. 3336.

Court of Civil Appeals of Texas.

Eastland.

Aug. 2, 1957.

Beall, Nunn & Griggs, Sweetwater, for appellants.

Morris G. Watson, Roby, for appellees.

GRISSOM, Chief Justice.

On December 28, 1925, J. A. Wimberley and wife executed a general warranty deed conveying a section of land to D. R. Anderson. Immediately following a statement of the consideration there was this sentence:

"It is hereby especially agreed that one fourth royalty being ⅟₃₂ of all the oil or mineral rights in the land herein conveyed be and is hereby reserved by the said J. A. Wimberly and wife Addie Wimberly."

In December, 1928, Anderson and wife conveyed said section to Zella Vea Fulghum "subject to the reservation by J. A. Wimberly in his aforesaid deed of one thirty second (⅟₃₂) of all the oil and mineral rights in the land hereinbefore conveyed." In December, 1929, Mrs. Fulghum conveyed said section to Dalton Moore. This deed also referred to the deed from the Wimberleys to Anderson and its record and recited that said conveyance was "subject to the reservation by J. A. Wimberly in his aforesaid deed of one thirty second (⅟₃₂) of all oil and mineral rights in the land hereinabove conveyed. There is further reserved in this conveyance, for myself and by heirs, one half of all the oil and minerals, and all rights thereto, save and except that one thirty second (⅟₃₂) heretofore reserved by the said J. A. Wimberly". On January 20, 1948, J. A. Wimberley and wife executed a deed to J. F. Miller conveying "an undivided ⅟₃₂ being 20 acres interest in and to all of the oil, gas

and other minerals substances in and under and that may be produced from" said section. This deed expressly granted the right of ingress and egress for the purpose of drilling for oil. It also recited:

"Said land being under an oil, and gas lease executed in favor of none, it is understood and agreed that this sale is made subject to the terms of said lease, but covers and includes all of the oil royalty, and gas rental or royalty due to be paid under the terms of said lease as to said lands above described only.

"It is understood and agreed that all of the money rentals from said described lands which may be paid to extend the term within which a well may be begun under the terms of said lease is to be paid to the said Grantee and in the event that the above described lease for any reason terminates or becomes cancelled or forfeited, then and in that event an undivided all of the lease interest and all future rentals on said land for oil, gas and other mineral privileges shall be owned by the said Grantee, is owning all of all oil, gas and other minerals in and under said lands, together with all interest in all future rents."

This deed was recorded in Volume 150 at page 40 of the deed records of Fisher County. On March 19, 1948, Wimberley and wife executed another mineral deed to J. F. Miller conveying to him "an undivided one Thirty-second (1/32) interest in and to all of the oil, gas and other minerals in and under, and that may be produced from" said section. Immediately following a description of the section this deed recited:

"It being understood and agreed that the interest herein conveyed is the interest reserved by the Grantors in a Certain dated December 28, 1925, recorded in Vol. 67, page 589, Deed Records of Fisher County, Texas, wherein the said J. A. Wimberley and Addie

Wimberley conveyed to D. R. Anderson the above land, and that this conveyance is made for the purpose of correcting certain errors in a mineral deed from grantors herein to J. F. Miller dated January 20, 1948, and recorded in Vol. 150, page 40, Deed Records of Fisher County, Texas.

"Together with the right of ingress and egress at all times for the purpose of mining, drilling and exploring said land for oil, gas and other minerals, and removing the same therefrom.

"Said land being now under an oil and gas lease executed in favor of Dancigar Oil and Refining Company, it is understood and agreed that this sale is made subject to the terms of said lease and/or any other valid covering same, but covers and includes one thirty-second of all of the oil royalty and gas rental or royalty due and to be paid under terms of said lease, in so far as it covers the above described land.

"It is understood and agreed that one thirty-second of the money rentals, which may be paid, on the above described land, to extend the term within which a well may be begun under the terms of said lease, is to be paid to the said Grantee; and, in event that the above described lease for any reason becomes cancelled or forfeited, then and in that event, Grantee shall own 1/32nd of all oil, gas and other minerals in and under said lands, together with a like interest in all bonuses paid, and all royalties and rentals provided for in future oil, gas and mineral leases covering the above described lands."

On February 2, 1948, Dalton Moore and J. F. Miller jointly executed an oil and gas lease on the north one-half of said section to Danciger Oil & Refining Company. It provided for payment to Moore and Miller of all the royalty, being the usual one-eighth of the oil produced.

On May 16, 1948, Miller and wife leased to Chester Imes their ½nd interest in the minerals in the south one-half of said section. Said lease contained the following proportionate reduction clause:

"If said less*ors* owns a less interest in the above described land than ⅓₂nd of the entire and undivided fee simple estate therein, then the royalties and rentals herein provided for shall be paid lessor only in pro*prot*ion which Lessor's interest bears to the whole and undivided fee."

On August 22, 1955, the Wimberleys and J. F. Miller executed the following agreement:

"Whereas, on January 20, 1948, J. A. Wimberley and wife, Addie May Wimberley, executed and delivered a conveyance to J. F. Miller purporting to convey one thirty-second (⅓₂nd) interest in the oil, gas and other minerals in, under and that may be produced from the following described land situated in Fisher County, Texas, to wit:

The James Vaughn Survey No. 231, Abstract No. 360, containing 640 acres, more or less;

such deed being recorded in Vol. 182, page 471, Deed Records of Fisher County, Texas; and

"Whereas, on March 19, 1948, the same grantors executed a conveyance to the same grantee purporting to convey ⅓₂nd interest in and to all of the oil, gas and other minerals in, under and that may be produced from the same lands hereinabove described, such deed being intended for the purpose of correcting certain errors in the first deed hereinabove; and

"Whereas, the grantors and grantee in the above described conveyances now desire to stipulate and agree upon their respective interest in the royalties from oil, gas and other minerals which

may be produced from the above described land;

"Now, therefore, it is agreed by and between J. A. Wimberley and wife, Addie May Wimberley, First Parties, and J. F. Miller (whose marital status has not changed since acquiring the interest hereinabove described), Second Party, that the said J. F. Miller is entitled to one thirty-second (⅓₂nd) of all royalties from oil, gas or other minerals which may be produced from the above described land, and the said J. A. Wimberley and wife, Addie May Wimberley, are entitled to seven th*r*ity-second (⅞₂nd) of the royalties from oil, gas and other minerals which may be produced from the above described land and that the record owner of the remaining three-fourths (¾) royalty interest is, so far as these parties are concerned, the owner of and entitled to receive ¾ of the royalties from oil, gas and other minerals which may be produced from said lands. The consideration for this agreement is the complete settlement of any possible difference of opinion as to the meaning of each of the above described deeds, and $1.00 cash in hand paid by J. A. Wimberley and wife, Addie May Wimberly, to the said J. F. Miller, receipt of which is hereby acknowledged."

On the next day, August 23, 1955, Wimberley and wife executed a deed to Laverna Brock and others, whom we understand to be their children and all the defendants in this case, except J. F. Miller, purporting to convey, subject to a life estate, a ⅞₂nd interest in the royalty in said section "with the right of ingress and egress at all times for the purpose of mining, drilling and exploring said lands for oil, gas and other minerals and removing the same therefrom." This instrument recited that said section was under an oil and gas lease to the "record owner" and that the sale was subject to said lease, but included ⅞₂nd:

"Of all the oil royalty, and gas royalty, and casinghead gas and gasoline royalty, and royalty from other minerals or products, due and to be paid under the terms of said lease or leases only insofar as it or they cover the above described land. And it is further understood and agreed that notwithstanding the Grantee does not by these presents acquire any right to participate in the making of future oil and gas mining leases on the portion of said lands not at this date under lease, nor of participating in the making of future leases, should any existing or future leases for any reason become cancelled or forfeited, nor of participating in the bonus or bonuses which Grantor herein shall receive for any future lease, nor of participating in any rental to be paid for the privilege of deferring the commencement of a well under any lease, now or hereafter;

"Nevertheless, neither the Grantor nor the heirs, administrators, executors and assigns of the Grantor shall make or enter into any lease or contract for the development of said land or any portion of same for oil, gas or other minerals, unless each and every such lease, contract, leases or conracts, shall provide for at least a royalty on oil of the usual one-eighth to be delivered free of cost in the pipe line, and a royalty on *nau*ral gas of one-eighth of the value of same when sold or used off the premises, or one-eighth of the net proceeds of such gas, and one-eighth of the net amount of gasoline manufactured from natural or casinghead gas; and in the event Grantor, or the heirs, administrators, executors and assigns of the Grantor, or as in the status of the fee owners of the land and minerals or as the fee owner of any *pro*tion of said land, shall operate and develop the minerals therein, Grantee herein shall own and be entitled to receive a free royalty hereunder, (1) an undivided $\frac{7}{32}$ of $\frac{1}{8}$ of all the oil produced and saved from the premises delivered to Grantee's credit free of cost in the pipe line, (2) an undivided $\frac{7}{32}$ of $\frac{1}{8}$ interest and portion of the value or proceeds of the sales of natural gas when and while the same is used or sold off the premises, (3) an undivided $\frac{7}{32}$ of $\frac{1}{8}$ of the net amount of gasoline or other products manufactured from gas or casinghead gas produced from wells situated on the premises."

Moore and wife sued Miller and the Wimberley children to remove the cloud cast on their title by the execution and recording of said instruments wherein the Wimberleys purported to convey an interest other than a $\frac{1}{32}$nd part of the oil, gas and minerals in said section to Miller and their children. The Moores concluded that when the Wimberleys in 1948 conveyed a $\frac{1}{32}$nd interest in the minerals to Miller they conveyed all the interest they reserved when they sold the section to Anderson in 1925 and, therefore, they conveyed nothing to their children when they purported on August 23, 1955, to convey to them a $\frac{7}{32}$nd interest in the royalty and accomplished nothing by the agreement with Miller, made on the preceding day, that the Wimberleys owned a $\frac{7}{32}$nd and Miller a $\frac{1}{32}$nd interest in the royalty in said section. Of course, Miller lost nothing by such agreement because, with or without this agreement, by virtue of his deed from Wimberley he owned a $\frac{1}{32}$nd interest in the minerals and under his lease, executed jointly with Moore, as the owner of that interest he was entitled to receive $\frac{1}{32}$nd of the $\frac{1}{8}$th royalty provided for in the lease.

The court held that the Wimberleys reserved $\frac{1}{4}$th of the customary $\frac{1}{8}$th royalty and that the reservation was not ambiguous. The Moores have appealed. They contend that said reservation is ambiguous and that it was the intention of the parties to reserve only a $\frac{1}{32}$nd interest in the minerals. Miller and the Wimberley children say the reservation is not ambiguous; that it clear-

ly expresses in proper language the exact intention of the parties and that Wimberley reserved 1/4th "of the customary one-eighth" royalty which might be retained by some lessor in some future oil lease, which would be a 1/32nd part of all oil and gas "produced". The land was not leased in 1925 when Wimberley and wife executed the deed to Anderson which contained the reservation of "one-fourth royalty being 1/32 of all the oil or mineral rights in the land herein conveyed". There was then no reservation by a lessor of 1/8th of the oil that might be produced. "1/4th royalty" means one-fourth of all the oil produced, not 1/4th of the 1/8th usually, but not always nor necessarily, reserved by a landowner in executing an oil lease. Watkins v. Slaughter, Tex.Civ.App., 183 S.W.2d 474, 477; Id., 144 Tex. 179, 189 S.W.2d 699, 700. Although we may take judicial notice that it is now customary to reserve 1/8th of the oil produced as the land or mineral owner's royalty, we doubt if this were true in 1925. The intent to reserve 1/8th, claimed by appellees, must apply to all minerals, not just oil. We do not think it is customary to reserve, as royalty, 1/8th of all minerals produced. The reservation in question dealt not alone with oil, but with all minerals. There was no provision requiring a reservation by Anderson or any subsequent grantee of 1/8th royalty in any future lease. Therefore, to follow appellees reasoning we would have to presume that Wimberley and Anderson did not intend for the words "one-fourth royalty" to have their ordinary meaning and, though there was no provision requiring it, that Anderson or some subsequent owner of the section would lease the land and reserve 1/8th of the oil and all other minerals produced, as royalty. Appellees' contention would require us to add to the contract and change the words "one-fourth royalty" to 1/4th "of the one-eighth royalty usually reserved" by a landowner in leasing land for oil development. It would also compel us to change the parties' definition of "one-fourth royalty", to wit, "being 1/32 of all the oil or mineral rights in the land herein conveyed" to 1/32nd

of all the oil or minerals "produced" from the land. The parties' definition did not call for a percent of the oil "produced" but for a percent of the oil in the ground. See King v. First National Bank of Wichita Falls, 144 Tex. 583, 192 S.W.2d 260, 261. One-fourth royalty is not the equivalent of a 1/32nd of the oil in the land. Even if we could assume that the parties intended "one-fourth royalty" to mean 1/4th of the usual 1/8th royalty then we should, in attempting to ascertain the meaning of the second portion of the same sentence, also assume that, when they referred to 1/32nd of the oil in the ground, that they had in mind that the owner of such 1/32nd interest would receive from the production the same amount that such royalty owner would receive. Under such a situation, the owner of a 1/32nd interest in the oil in the land would receive from production, not the same as the owner of the 1/4th of the usual 1/8th royalty, that is, 1/32nd part of the production, but 1/32nd of 1/8th of the oil produced under such a lease. Assuming, as appellees do, that the parties contemplated that the landowner would lease the land and contract for a royalty of 1/8th of the production, the owner of a 1/32nd interest in the minerals in place would ordinarily have to surrender to a lessee 7/8ths of his interest to get production. Countiss v. Baldwin, Tex.Civ.App., 151 S.W.2d 235, 237 (Writ Dis.); 3 Summers Oil & Gas, 480, note 17; Richardson v. Hart, 143 Tex. 392, 185 S.W.2d 563.

The unpunctuated sentence containing the reservation apparently first purports to reserve a 1/4th royalty and then a 1/32nd interest in the minerals in the land and defines them as being the same thing. The reservation was "reasonably susceptible to more than one meaning". Universal C. I. T. Corp. v. Daniel, 150 Tex. 513, 243 S.W. 2d 154, 157; 3 Summers Oil & Gas 477, 482. It certainly does not "plainly and clearly appear" from the terms of the reservation that the parties intended that 1/4th of the customary 1/8th of the oil that might be produced under some future lease should be retained by Wimberley. State National

Bank of Corpus Christi v. Morgan, Tex. Com.App., 135 Tex. 509, 143 S.W.2d 757, 762. This is particularly true because it appears that they attempted to define a ¼th royalty as a ⅟₃₂nd of the oil in the land, which, under the assumed lease with an assumed reservation of a ⅛th royalty, would not produce the same result or amount to the same thing. 31–A Tex.Jur. 83, 87; Watkins v. Slaughter, 144 Tex. 179, 189 S.W.2d 699, 700; Walker v. McDonald, 49 Tex. 458, 462; Curry v. Texas Co., Tex.Civ.App., 8 S.W.2d 206 (Writ Dis.); 14 Tex.Jur. 924, 926; Acklin v. Fuqua, Tex.Civ.App., 193 S.W.2d 297 (RNRE); 3 Words and Phrases, Ambiguous, pp. 440, 444; 4 A.L.R.2d 500; 3 Summers Oil & Gas 474; Williams v. J. & C. Royalty Co., Tex.Civ.App., 254 S.W.2d 178 (Writ Ref.). We conclude the reservation is ambiguous.

■ Being ambiguous the construction placed thereon by the parties is entitled to great weight. 12 Am.Jur. 788.

"At best the meaning of the (reservation) is doubtful and it is capable of two constructions. This being true, the (reservation) is ambiguous." Superior Oil Co. v. Stanolind Oil & Gas Co., 150 Tex. 317, 240 S.W.2d 281, 284.

In Lone Star Gas Company v. X-Ray Gas Company, 139 Tex. 546, 164 S.W.2d 504, 508, our Supreme Court said:

"If there is any doubt as to the meaning of a contract like the one before us, the courts may consider the interpretation placed upon it by the parties themselves. In this instance the acts of the parties themselves indicated the construction they mutually placed upon the contract at the time, including the acts done in its performance, and same is entitled to great if not controlling weight. Courts will generally follow the interpretation of the parties to a doubtful contract. The practical construction placed upon a contract by the parties themselves constitutes the highest evidence of their intention that whatever was done by them in the performance of the contract was done under its terms as they understood and intended same should be done."

See also 14 Tex.Jur. 924, 925; Galveston, H. & S. A. Ry. Co. v. Johnson, 74 Tex. 256, 11 S.W. 1113; Curry v. Texas Co., Tex.Civ.App., 8 S.W.2d 206 (Writ Dis.); Henderson v. Book, Tex.Civ.App., 128 S. W.2d 117 (Writ Ref.); Havard v. Smith, Tex.Civ.App., 13 S.W.2d 743 (Writ Ref.) and Acklin v. Fuqua, Tex.Civ.App., 193 S.W.2d 297 (RNRE).

The Wimberleys and Anderson attempted in the 1925 deed to define what they meant by "one-fourth royalty". They, at least, indicated they meant a ⅟₃₂nd interest in the oil in place. The grantee in said deed still construed the reservation to be a ⅟₃₂nd interest in the oil when, in 1928, Anderson conveyed the section to Mrs. Fulghum "subject to the reservation by J. A. Wimberley in his aforesaid deed of one thirty-second (⅟₃₂) of all oil and mineral rights in the land hereinbefore conveyed. There is further reserved in this conveyance, for myself and my heirs, one half of all the oil and minerals, and all rights thereto, save and except that one thirty-second (⅟₃₂) heretofore reserved by the said J. A. Wimberley". The writers of said reservation and owners of the reserved interest, J. A. Wimberley and wife, as late as 1948, still construed their 1925 deed to Anderson as reserving a ⅟₃₂nd of the minerals in place when they conveyed same to J. F. Miller, one of the defendants, describing it as "an undivided ⅟₃₂ being 20 acres interest in and to all of the oil, gas and other minerals and minerals substances in and under and that may be produced from the following described land—", and expressly conveyed the right of ingress and egress for the purpose of drilling for oil on said section. To make their interpretation of the reservation as

one of minerals, not royalty, even more definite, in March, 1948, the Wimberleys executed a correction deed to Miller conveying to that defendant "an undivided one thirty-second (1/32) interest in and to all of the oil, gas and other minerals in and under, and that may be produced from the following described land" and stating that this was the interest reserved by the Wimberleys in their 1925 conveyance to Anderson. They also recognized the right of Moore and Miller alone to lease the land to Danciger. Apparently, neither the grantor nor the grantee in said 1925 deed containing the reservation in question, nor the grantor or grantee of said reserved interest ever contended from 1925 to 1955 that the Wimberleys had reserved anything other than a 1/32nd interest in the minerals. We do not know what happened to cause them, after thirty years, to change their interpretation.

When Wimberley and Miller executed an agreement in 1955 fixing, as between themselves only, their interests in said section they did not expressly question their thirty years interpretation of said reservation as being a 1/32nd mineral interest but merely agreed that Miller then owned a 1/32nd and the Wimberleys a 7/32nd interest in the royalty produced under an oil and gas lease covering the north one-half of said section. This lease was executed jointly by J. F. Miller and Dalton Moore and provided for payment to them of all the royalty. The defendant Miller, the grantee in the Wimberleys' mineral deed, again construed said deed to be a conveyance of a 1/32nd interest in the minerals when he leased his interest in the south half of said section to Imes, in 1948, and provided "if said lessors owns a less interest in the above described land than 1/32nd of the entire and undivided fee simple estate therein, then the royalties and rentals herein provided for shall be paid lessor only in proprotion which Lessor's interest bears to the whole and undivided fee."

 It appears from the evidence mentioned that the defendants, grantors and Miller, have construed the sentence in question to be a reservation of minerals, not royalty and that all the defendants should be bound thereby. See Henderson v. Book, Tex.Civ.App., 128 S.W.2d 117 (Writ Ref.); Whitaker v. Neal, Tex.Civ. App., 187 S.W.2d 147; Jones v. Bedford, Tex.Civ.App., 56 S.W.2d 305 (Writ Ref.); Way v. Venus, Tex.Civ.App., 35 S.W.2d 467; McMahon v. Christmann, Tex., 303 S.W.2d 341, 304 S.W.2d 267. However, the distinguished trial judge held that the reservation was unambiguous. Therefore, he could not have considered said evidence. It is not evident that the case has been fully developed. The judgment must, therefore, be reversed and the cause remanded. Fantham v. Goodrich, 150 Tex. 601, 244 S.W.2d 510.

It is so ordered.