ACCEPTED
12-15-00105-CV
TWELFTH COURT OF APPEALS
TYLER, TEXAS
11/10/2015 2:37:14 PM
Pam Estes
CLERK

NO. 12-15-00105-CV

FILED IN
12th COURT OF APPEALS
TYLER, TEXAS
11/10/2015 2:37:14 PM
PAM ESTES
Clerk

## IN THE TWELFTH COURT OF APPEALS
## TYLER, TEXAS

CONSOLIDATED PROPERTY
INTERESTS, LLC

APPELLANT

V.

JERRY PAYNE AND PENNY PAYNE

APPELLEES

APPEALED FROM THE 273RD JUDICIAL DISTRICT COURT
SABINE COUNTY, TEXAS

BRIEF FOR APPELLEE

JOHN H. SEALE
SEALE, STOVER & BISBEY
P. O. BOX 480
JASPER, TEXAS 75951
TELEPHONE: (409) 384-3463
FACSIMILE: (409) 384-3017
EMAIL: katiecmorgan@yahoo.com
ATTORNEYS FOR APPELLEE
PENNY PAYNE

ORAL ARGUMENT REQUESTED

# TABLE OF CONTENTS

**Page**

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Index of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Statement of the Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

Statement Regarding Oral Argument. . . . . . . . . . . . . . . . . . .  2

Issues Presented . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

Statement of Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

Summary of the Argument . . . . . . . . . . . . . . . . . . . . . . . . . .  8

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

Prayer. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Certificate of Service. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Word Count Certification. . . . . . . . . . . . . . . . . . . . . . . . . . 18

# INDEX OF AUTHORITIES

**Page**

Chandler vs. Hartt, 467 SW2d 629
 (Tyler Ct. Of Civil App. 1971, writ ref. N.R.E.). . . . . . . . . . . . . . . 15

Greene vs. White, 153 SW2d 575 (Tex. 1941). . . . . . . . . . . . . . . . . . 15

Henderson vs. Book, 128 SW2d 117 (San Antonio Ct. of
 Civil Appeals 1939, writ refused ). . . . . . . . . . . . . . . . . . . . . . . . . 15

Kahn v. Kahn, 94 Tex. 114, 58 SW 825. . . . . . . . . . . . . . . . . . . . . . 15

Martin v. Roberts, 57 Tex. 564, 568. . . . . . . . . . . . . . . . . . . . . . . . . 15

Orbeck v. Alfei, Tex. Civ. App. 276 SW 947. . . . . . . . . . . . . . . . . . 15

Pridgen v. Furnish, Tex. Co,. App., 23 SW2d 307. . . . . . . . . . . . . . 15

Westland Oil Development Corporation v. Gulf Oil Corporation,
 637 SW2d 903 (Tex. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Williams vs. Hardie, 22 SW 399 (Tex. 1893). . . . . . . . . . . . . . . . . . 14

## TEXT

16 Am. Jur. p. 645, §358. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

19 Am. Jur. p. 627 §29 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

21 Corpus Juris. p. 1095 §81 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## STATEMENT OF THE CASE

Appellant Consolidated Property Interests, LLC, brought this suit to settle a dispute as to mineral ownership on roughly 620 acres of land, and Appellee and her husband (now deceased) answered and filed a counterclaim to remove a cloud on the title to a 1/2 mineral interest. The trial court ruled in favor of Appellee (CR 238-241). Appellant then perfected an appeal to this court.

## STATEMENT REGARDING ORAL ARGUMENT

Appellee agrees that oral argument would be helpful to the court, because of the complicity of the issues in this case.

# ISSUES PRESENTED

**Issue No. 1** (In response to Appellant's No. 1)

The trial court did not err in determining the mineral ownership.

**Issue No. 2** (In response to Appellant's No. 2)

Appellant is not entitled to recover declaratory judgment attorney's fee unless the trial court awards them in the exercise of its discretion, and no attorney fees were awarded by the trial court in this case.

## STATEMENT OF FACTS

The only non-party witness called by the Plaintiff was Robert Moffett, an attorney. He testified that he "went to do the record search to try and figure out what, if anything, Chris Casey and his - - you know, he and his family own". (CR 60). He testified as to his procedure to arrive at an opinion about whether a conveyance resulted in community or separate property, at CR 63:

"And so I can - - there's always two ways to write an opinion. You know, does it look like they've treated it as community property? Does it look like they've treated it as separate property? And you can sit there - - they would require different requirements, but you could - - you - - you make your - - your best guess on what it is. It's still subject rebuttal; but you make your best guess on what it is, and you write your opinion from that".

On the issue of whether they "treated it" as community property or separate property, lawyer-witness Moffett testified that he was familiar with a lease from the Paynes to Chesapeake where a lease bonus of "a quarter of a million" was paid for a lease of one-half (1/2) of the minerals under 492 acres, CR 82. That lease was the one where $1,000.00 an acre bonus was paid for a lease on one-half (1/2) of the minerals under 492 acres (CR 149, 9, 81-82).

Mr. Moffett contended that after Frances Payne Casey deeded a one-fourth (1/4)

-4-

mineral interest in the subject property to Mr. Shelby, she still owned a one-fourth (1/4) mineral interest (CR 85). However, he was shown Defendant's Exhibit 1A, which was an Inventory and Appraisement of her property in her estate records, and there was no listing of any mineral interest in the property involved in this suit (CR 86-89).

Appellee Penny Payne's testimony begins at RR 131 and ends at RR 154. She testified that this property was known to the Payne family as the "Sexton Farm" and was first acquired by Robert Polley by grant from the Republic of Texas. Robert Polley died in 1847 and his son John Polley then died in 1893 and then John's daughter Jenny Polley Payne came into ownership of the property. Jenny then died in 1903 and her son J. O. Payne came into full ownership upon receiving a deed to one-half (1/2) interest from his sister Lucy in 1904 (CR 132-137).

J. O. Payne executed a deed in 1904 to the property in controversy here, along with several other tracts, to his uncle W. A. Polley in 1904 (Defendant's Exhibit 1), then married Pearl Leak on November 4, 1905 (RR 137), and they had two children, James Oliver Payne, Jr. and Frances Payne, in 1907 and 1908. Pearl died in January of 1909 as result of complications from childbirth of James O. Payne, Jr. (RR 138). W. A. Polley reconveyed the property in controversy, along with other tracts, to his nephew J. O. Payne on December 15, 1907 (Defendant's Exhibit 2). Next was testimony proving up a 1983 newspaper article and picture telling of the building of a house in 1906 by J. O. Payne for his bride. This testimony is at RR 140-141, and this exhibit is Defendant's Exhibit 4.

The next Defendant's exhibit was the deed from J. O. Payne to his second wife Gertrude Payne, of a one-half (1/2) interest in the property in question. This is offered and received at RR 142, and is in evidence as Defendant's Exhibit 6. Then the oil and gas lease from J. O. Payne and wife Gertrude Payne to Sun Oil Company, dated February 12, 1931, was offered and received in evidence at RR 142-143, and is in evidence as Defendant's Exhibit 7.

The last of the exhibits offered by Defendant and received by the trial court were Defendant's Exhibits 8 and 9, and this appears at RR 143-144. Defendant's Exhibit 8 is the mineral deed with recitals. Defendant's Exhibit 9 is an oil and gas lease from J. O. Payne Bridges (formerly J. O. Payne, Jr.) to W. A. Bridges in 1938, in which he leases an undivided one-fourth (1/4) interest in the minerals under the subject property. The testimony at RR 145 was that J. O. Payne Bridges had lived with W. A. Bridges and changed his name to Bridges.

Further testimony by Appellee Penny Payne revealed that there were five children born to J. O. Payne and Gertrude Payne, that one had died at age 16 with no issue, and that the other three had conveyed their interests to Penny's husband Jerry Payne (RR 146-147). Appellee said that her husband Jerry Payne and his half-sister Frances Payne Casey were compatible in every way, and talked about property that they owned and the old home place, etc. (RR 148). She said that in addition to the lease to Chesapeake, that they had leased this property previously to Exxon through a "lady from Jasper" (RR 149). Her testimony concluded with the statement that her husband's will had resulted in her succeeding to his

interest in the property (RR 151). Then after some questions by the trial court, Appellee testified that she knew from family history that there was a very close relationship between J. O. Payne and his uncle W. A. Polley, and W. A. Polley was like a father to J. O. Payne once J. O. Payne's father had died when J. O. was eight years old. (RR 152).

## SUMMARY OF THE ARGUMENT

Appellee acknowledges that the timing of the deed from J. O. Payne to his uncle when the grantor was single, followed by a reconveyance of the property when J. O. Payne was married, results in a presumption of community property. However, the "treatment" of the property by the parties and their descendants for over a century and the wording of a mineral deed result in the Appellee being the rightful owner of one-half of the minerals. No attorney fees were awarded by the trial court, and only the trial court may award attorney fees in such a case.

## ARGUMENT

Appellee concedes that she is not able to rebut the Texas law presumption that a deed to a married person makes the conveyed property community property. This is because of the long-sealed lips of J. O. Payne, his uncle W. A. Polley, and others around in the first decade of the 20th century. Also the poor wording of the deeds involved, prevents her from producing the clear and convincing evidence necessary to rebut the community property presumption. Therefore, no response is made to the argument presented at page 9 through the first four lines of page 25 of Appellant's Brief. But the case does not end there.

The decisive issue in this case is the interpretation of the 1931 instrument which is in evidence as both Plaintiff's Exhibit 9 and Defendant's Exhibit 8. It is elementary that when construing and interpreting an instrument, a court must look at the entire instrument and consider why certain words or phrases were used in the instrument, since, after all, the court must try to determine what the intent of the parties (grantors and grantees) was at the time of the execution of the instrument. In fact, several of the cases cited at page 13 of Appellant's brief refer to this rule.

Appellant's brief at page 25 contends that family members recognized that the property was community property. Appellee contends that that is simply Appellant's counsel's theory. On the contrary, various actions over the years indicate just the opposite. For example, Appellate contends at page 26 of his brief that the 1916 deed from J. O. Payne to his wife Gertrude of a one-half undivided interest in the property means that J. O. Payne

was recognizing that "Pearl Payne owned a community interest". On the contrary, it is clear to the writer that the January 12, 1916 deed from J. O. Payne to his new wife he had married on May 20, 1915 (RR 145), resulted from his desire to make his wife an owner of an undivided one-half interest in the property while retaining ownership of the other one-half undivided interest. Therefore, he was considering this as separate property.

The same difference of opinion applies to the 1938 oil and gas leases from James, Jr. and Frances to James' foster father W. A. Bridges of a one-fourth interest each in the minerals. Appellant contends at pages 26-27 of its brief that this is all they could lease because the 1931 lease to Sun Oil Company had a 10-year primary term. The fact is that the 1931 lease had provisions for the lease terminating yearly if delay rentals were not paid (Plaintiff's Exhibit 8 and Defendant's Exhibit 9), and there was no evidence presented that showed that any delay rentals had ever been paid. Appellee's position is that the reason James, Jr. and Frances leased one-fourth interest each is that they (and W. A. Bridges) thought that was all they owned.

The same is true of Frances' mineral deed to Shelby in 1948 (Plaintiff's Exhibit 14) of a one-fourth mineral interest. Appellant contends that she still had another one-fourth interest after that, but the Inventory and Appraisal filed in her probate proceedings did not list any interest in this property, while it did list numerous much smaller interests in other properties in Sabine County and other counties. Defendant's position is that she deeded all that she ever owned in this property, which was a one-fourth mineral interest. Surely,

Frances' son who was executor of her estate would not have "overlooked" his mother's one-fourth interest in 492 acres of land if she had still owned such an interest at the time of her death.

## THE OIL AND GAS LEASE AND THEN
## THE MINERAL LEASE WITH RECITALS

On February 12, 1931, J. O. Payne and wife, Gertrude Payne, executed an oil and gas lease to Sun Oil Company, and this lease is in evidence as Plaintiff's Exhibit 8 and also as Defendant's Exhibit 7.

Then 28 days later, on March 12, 1931, an instrument purports to convey a one-half interest in the minerals under the subject property to James O. Payne, Jr. and Frances Payne Casey. This instrument is in evidence as Plaintiff's Exhibit 9, and contains the following recital:

> "Said land being now under an oil and gas lease, executed in favor of the Sun Company, it is understood and agreed that this sale is made subject to the terms of said lease, but covers and includes one-half of all of the oil royalty, and gas rental or royalty, due and to be paid under the terms of said lease, insofar as it covers the above-described property.
>
> It is understood and agreed that one-half of the money rentals which may be paid to extend the terms within which a well may be begun under the terms of said lease is to be paid to the said grantees, and in event that the above-described lease for any reason becomes canceled or forfeited, then and in that event an undivided one-half of the lease interest and all future rentals on said land for oil, gas and all other mineral privileges shall be owned by said grantees, they owning one-half of oil, gas and other minerals in and under said lands, together with one-half interest in all future rents". (Emphasis Defendants')

-11-

The above recital clearly indicates that the grantees after the execution of this instrument owned only one-half of the minerals, and the grantors owned the other one-half. This was recognized by James O. Payne, Jr. and Frances Casey by the fact that in 1938, James, Jr. leased to W. A. Bridges his one-fourth interest in the minerals and Frances Payne Casey leased her one-fourth interest in the minerals. (J. O. Payne Bridges was the same person as James O. Payne, Jr. following his name change to James Payne Bridges). These leases are in evidence as Plaintiff's Exhibits 9 and 10.

The position of Appellant Consolidated in this case is that J. O. Payne and Gertrude Payne owned no minerals after the 1931 instrument, while the position of Defendants is that they owned one-half of the minerals and always have owned them. These 1938 leases by James O. Payne, Jr. and Frances Payne Casey clearly show that they were only claiming one-fourth of the minerals each, with their father owning the other one-half. Opposing counsel and "lawyer-witness" Moffett argue that they could only lease one-fourth each because their "other one-fourth" was tied up by the 1931 lease to Sun Oil (which they did not sign), and that lease had a 10-year term which would not expire until 1941. That argument overlooks the fact that the Sun Oil lease provided for annual "delay rental payments" and provided that the lease would expire if and when there was no annual payment made. This provision in the lease is in paragraph 2 of the Sun Oil lease, which is in evidence as Plaintiff's Exhibit 8. This was the reason for the objections to the repeated efforts of opposing counsel to get Mrs. Payne to agree with him that the effect of the 1931 oil and gas

lease was to prevent James O. Payne, Jr. and Frances Payne Casey from leasing more than one-fourth of the minerals until 1941.

Also, if the intent of the parties to the mineral deed had intended for the grantees Frances and James to own all the minerals after the execution of the deed, how was Sun Oil Company going to handle payment of delay rentals, if any, or royalties, if any? The recital says that after the deed, one-half of the minerals and/or royalties will be paid to the grantees. If so, who would the other one-half be paid to, if not the grantors?

The recital in the 1931 mineral deed made it clear that the Plaintiffs after the execution of such mineral deed would indeed only own a one-half interest in the minerals. It is certainly logical that J. O. Payne and his wife Gertrude would not intend that the two children of J. O. Payne by his prior marriage (then aged 24 and 22), would end up with all of the minerals under almost 500 acres of land, when that would result in their children (then aged 14, 11, 9, 9 and 19 months) having no minerals after their parents died. The recital in the 1931 instrument therefore made it clear that the two children would only own one-half of the minerals after the 1931 instrument. The execution of such an instrument was obviously the result of the grantors wanting to make it clear that the two children by the first marriage of J. O. Payne would then together own one-half of the minerals, and J. O. Payne and Gertrude Payne together, and their children after they died, would own the other one-half of the minerals.

It is also interesting to note that the evidence showed that Mr. and Mrs. Payne received a $246,000.00 bonus for their lease of their one-half interest in the minerals to the 492 acre tract in 2008. This is when they executed a lease to Chesapeake. The evidence showed that this was a lease for $1,000.00 an acre, and of course $246,000.00 is one-half of 492 acres. Moffett's only response to this was to say that Chesapeake was notorious for throwing away huge amounts of money. The fact is that the attorneys for Chesapeake obviously had a quite different view of this title than Mr. Moffett seems to have.

Appellee respectfully submits that if the parties had intended for the grantees to own all of the minerals after the 1931 instrument, they would have ended it by saying that all of the delay rentals and royalties would now be paid to the grantees, "they now owning all of the minerals".

The law in Texas concerning recitals in deeds and estoppel by deed has been recognized for well over 100 years. In the case of Williams vs. Hardie, 22 SW 399 (Tex. 1893), the Supreme Court at 22 SW 401 quoted from an old English case as follows:

> "A recital or allegation in a deed or bond which is certain in its terms, and relevant to the matter in hand, will therefore be conclusive between the parties in any controversy growing out of the instruments itself, or the transaction in which it was executed."

Our Supreme Court then followed with this statement:

> "The doctrine of an estoppel by deed is essentially different from that of an estoppel in pais, and is founded upon the theory that the parties have contracted upon the basis of the recited facts."

In the case of <u>Henderson vs. Book</u>, 128 SW2d 117 (San Antonio Ct. of Civil Appeals 1939, writ refused), the Court stated at 128 SW2d 120:

> "It has been held many times that recitals in deeds bind both parties and parties claiming under such deeds."

In the case of <u>Greene vs. White</u>, 153 SW2d 575 (Tex. 1941), our Texas Supreme Court stated, at 153 SW2d 583:

> "The general rule is that the grantee in a deed accepted by him is a party to the deed, even though he does not sign it, and that he is concluded by recitals in the deed and by reservations contained therein in favor of the grantor. <u>Martin v. Roberts</u>, 57 Tex. 564, 568; <u>Orbeck v. Alfei</u>, Tex. Civ. App. 276 SW 947; 21 Corpus Juris. p. 1095, § 81; 19 Am. Jur., p. 627, Sec. 29, p. 624, Sec. 26. 'The obligations undertaken by the parties to a deed are binding contractually; and where the conveyance is by way of deed poll – that is, one executed by the grantor along – obligations are enforceable against the grantee by virtue of his acceptance of the deed.' 16 Am. Jur., p. 645, Sec. 358. The recitals in the deed that the vendor's lien is retained to secure payment of notes executed by Garrett are contractual. <u>Pridgen v. Furnish</u>, Tex. Com. App., 23 SW2d 307. The recitals which give the surface estate to Garrett and reserve the mineral estate to Greene are likewise contractual. They define the character and extent of the ownership and interests of the parties in the land affected by the deed. <u>Kahn v. Kahn</u>, 94 Tex. 114, 58 SW 825."

In the case of <u>Chandler vs. Hartt</u>, 467 SW2d 629 (Tyler Ct. of Civil App. 1971, writ ref. N.R.E.), the Court stated, at 467 SW2d 633:

> "Even though Mrs. Hartt did not sign the 1929 deed, nevertheless she was a party to the deed and by accepting it, she is precluded by recitals therein in favor of the grantors."

The Court went on to say, at 467 SW2d 633 - 634:

> "The obligations undertaken by the parties to a deed are binding contractually; and where the conveyance is by way of deed executed by the grantor alone – obligations are enforcible against the grantee by virtue of his acceptance of the deed."

Then in 1982, our Supreme Court said, in <u>Westland Oil Development Corporation vs. Gulf Oil Corporation</u>, 637 SW2d 903 (Tex. 1982), at 637 SW2d 908:

> "It is well settled that a purchaser is bound by every recital, reference and reservation contained in or fairly disclosed by any instrument which forms an essential link in the chain of title under which he claims."

The trial court has the exclusive right to award or not award attorney fees in a declaratory judgment case, and none were awarded in this case to either party. If <u>any</u> attorney fees are to be awarded, the trial court has the exclusive right to decide the amount.

## P R A Y E R

WHEREFORE, Appellee prays that the Judgment of the trial court be affirmed.

Respectfully submitted,

SEALE, STOVER & BISBEY
P. O. Box 480
Jasper, Texas 75951
Telephone No: (409) 384-3463
Fax No: (409) 384-3017
Email: katiecmorgan@yahoo.com
Attorneys for Appellee


By:_____
    John H. Seale
    SBN: 17946000

-16-

## CERTIFICATE OF SERVICE

On November 10, 2015, this Brief of Appellee was eServed on the following counsel for Appellant.

Gregory D. Smith - gsmith@rameyflock.com

Brent L. Watkins - bwatkins@skeltonslusher.com

John H. Seale

# WORD COUNT CERTIFICATION

I certify that the number of words in this Brief for Appellee, as defined in Texas Rule of Appellate Procedure 9.4(I), is <u>3452</u>.

_____
John H. Seale